Jennifer M. French, SBN 265422
jenn@pattersonlawgroup.com
**PATTERSON LAW GROUP, APC**
402 W. Broadway Street, Unit 1950
San Diego, California 92101
Telephone: (619) 756-6990

Timothy M. Haggerty, NY SBN 4444675*
thaggerty@fklaw.com
Rupita Chakraborty, NY SBN 5697107*
rchakraborty@fklaw.com
Caroline McHugh, NY SBN 6044705*
cmchugh@fklaw.com
**FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP**
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
*Pro Hac Vice Applications Forthcoming*
*Attorneys for Legal Scholars as Amici Curiae*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> ROB BONTA, Attorney General of California, <br><br> Defendant. | Case No.: 3:23-cv-00945-AGS-KSC <br><br> **LEGAL SCHOLARS'** *AMICI CURIAE* **BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: August 11, 2023 <br> Time: 3:30 p.m. <br> Ctrm: 5C <br> Honorable Andrew G. Schopler |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 2

I.   AB 1594 IS A PREDICATE STATUTE BECAUSE IT IS
     "APPLICABLE TO THE SALE AND MARKETING" OF A
     FIREARM PRODUCT AS DEFINED BY PLCAA ....................................... 2

II.  LIABILITY FOR VIOLATION OF AB 1594 UNDER THE
     PREDICATE EXCEPTION IS ENTIRELY CONSISTENT WITH
     PLCAA'S STRUCTURE ....................................................................... 3

     A.   PLCAA's Explicit Commitment to Protecting Second
          Amendment Rights Is Expressed in the Predicate Exception's
          Knowledge and Proximate Causation Requirements ......................... 4

     B.   PLCAA's Explicit Commitment to Separation of Powers is
          Expressed in the Predicate Exception's Distinction Between
          Legislatively Created Causes of Action, Which May Serve as the
          Basis for a Lawsuit Against the Industry, and Judge-Made
          Causes of Action, Which May Not ................................................. 6

     C.   PLCAA's Explicit Commitment to Federalism is Expressed in
          the Predicate Exception's Invitation to State Legislatures to
          Enact Statutes that Impose Obligations and Prohibitions on the
          Firearms Industry ....................................................................... 9

III. THE NSSF'S IDIOSYNCRATIC DEFINITION OF A PREDICATE
     STATUTE CONTRADICTS THE PLAIN MEANING OF THE
     PREDICATE EXCEPTION AND ITS STATUTORY CONTEXT .............. 10

     A.   Under *Ileto*, Statutes that Specifically Target the Sale and
          Marketing of Firearms—Including those that Impose General
          Standards of Reasonable Care—Qualify as Predicate Statutes ......... 10

     B.   General Standards of Reasonable Care are Susceptible to
          Knowing Violation ..................................................................... 12

**Page**

C.   The Examples in the Predicate Exception Explicitly Encompass Predicate Statutes that Impose Duties of Care ................................... 13

D.   PLCAA's Other Exceptions Include Duties of Reasonable Care ....... 14

E.   A Predicate Statute Need Not Reference a State of Mind or a Proximate Cause ............................................................................... 16

CONCLUSION .................................................................................................. 19

1
2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5
6

*Carrera v. Maurice J. Sopp & Son*,
    177 Cal. App. 4th 366 (2009) ............................................................... 18

7
8

*Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*,
    963 F.3d 982 (9th Cir. 2020) ................................................................. 4

9
10

*Ghezavat v. Harris*,
    40 Cal. App. 5th 555 (2019) ................................................................ 18

11

*Hergenrether v. East*,
    61 Cal. 2d 440 (1964) .......................................................................... 19

12
13

*Ileto v. Glock, Inc.*
    565 F.3d 1126, 1134 (9th Cir. 2009) ..............................................*passim*

14
15

*Phillips v. Lucky Gunner, LLC*,
    84 F. Supp. 3d 1216 (D. Colo. 2015) .................................................... 8

16
17

*Russello v. United States*,
    464 U.S. 16 (1983) ................................................................................ 9

18
19

*Steinle v. United States*,
    2020 WL 60204 (N.D. Cal. Jan. 6, 2020), *aff'd*, 11 F.4th 744 (9th
    Cir. 2021).............................................................................................. 19

20
21

*Yates v. United States*,
    574 U.S. 528 (2015) .............................................................................. 8

22

**Statutes**

23
24

15 U.S.C. § 7901 ...................................................................................*passim*

25

15 U.S.C. § 7902 ....................................................................................... 2

26

15 U.S.C. § 7903 ...................................................................................*passim*

27

18 U.S.C. § 922 ........................................................................................ 17

28

iii

**Page(s)**

U.C.C. § 2-314(3) ................................................... 16

**Other Authorities**

Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, THE LAW OF
  TORTS § 148 (2d ed. 2016) ...................................... 7, 13, 15

Restatement (Second) of Torts § 308 (1965) ........................... 18

Restatement (Third) of Torts: Prod. Liab. § 2 (Am. L. Inst.1998) ......... 15

Robert Rabin, *Enabling Torts*, 49 DePaul L. Rev. 435 (1999) .............. 19

Timothy D. Lytton, *Using Litigation to Make Public Health Policy:
  Theoretical and Empirical Challenges in Assessing Product
  Liability, Tobacco, and Gun Litigation*, 32 J.L. MED. & ETHICS 556,
  557 (2004) ...................................................... 7

## INTEREST OF AMICI CURIAE

Amici are law professors with expertise in torts, statutory interpretation, constitutional law, and firearms litigation and regulation (the "Legal Scholars").[1] The Legal Scholars hold a variety of views about gun control and the value of lawsuits against the gun industry. Their interest is to assist the Court in properly construing the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901–7903. PLCAA has generated confusion in the courts and has at times been mischaracterized—including by plaintiff National Shooting Sports Foundation ("NSSF") in this case—in a manner inconsistent with its text and structure, and in plain contravention of core legal doctrines that the Legal Scholars teach and study.

No person or entity other than the Legal Scholars and their counsel authored this brief in whole or in part. No person or entity other than the Legal Scholars and their counsel contributed money intended to fund preparing or submitting this brief. The Legal Scholars submit this brief with the consent of all parties.

## INTRODUCTION

Congress passed PLCAA in response to civil lawsuits seeking to hold firearms manufacturers and sellers liable for harm caused by unlawful third-party misuse of their products. These lawsuits, asserting various common law claims, alleged that gun industry defendants failed to take reasonable precautions in the design, marketing, distribution, and sale of weapons, resulting in illegal gun trafficking and criminal shootings. To address concerns about such lawsuits, PLCAA delineates a class of lawsuits—referred to as "qualified civil liability action[s]," 15 U.S.C. § 7902(a)—that federal and state courts may not hear.

---

[1] The Legal Scholars submit this brief as individuals, not as representatives of their respective universities. The names of the Legal Scholars are listed in Appendix A, with institutional affiliations provided only for purposes of identification.

Importantly, PLCAA also specifies a class of lawsuits that courts *should continue to* hear. *Id.* § 7903(5)(A)(i)–(vi). Thus, PLCAA is not a complete bar to all lawsuits against firearms manufacturers and sellers for harm caused by unlawful third-party misuse of their products.

At issue in this case is PLCAA's predicate exception, 15 U.S.C. § 7903(5)(A)(iii). Under the predicate exception, PLCAA does not preempt "an action in which a manufacturer or seller . . . knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." *Id.* § 7903(5)(A)(iii). This provision is known as the "predicate exception" because it rests on a defendant's violation of an underlying, or "predicate," statute.

Part I of this brief demonstrates that Assembly Bill 1594, the "Firearm Industry Responsibility Act," 2022 California Laws ch. 98 ("AB 1594"), is unambiguously a predicate statute according to the plain text of PLCAA's predicate exception. Part II then establishes that liability for violation of AB 1594 under the predicate exception is entirely consistent with PLCAA's overall structure. Finally, Part III exposes the NSSF's mischaracterization of Ninth Circuit precedent, misapplication of statutory interpretation canons, and misrepresentation of well-accepted tort principles in its efforts to convince the court that the predicate exception does not mean what it plainly says.

## ARGUMENT

### I. AB 1594 is a Predicate Statute Because it is "Applicable to the Sale and Marketing" of a Firearm Product as Defined by PLCAA.

Under PLCAA's predicate exception, a court may hear "an action in which a manufacturer or seller of a [firearm] product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii).

Thus, for a lawsuit to qualify under the predicate exception, it must meet two requirements. First, a manufacturer or seller's alleged conduct must violate a predicate statute. Second, the claim must allege that the manufacturer or seller *knowingly* violated that statute and that such violation proximately caused harm.

Facially, a predicate statute is any "State or Federal statute applicable to the sale or marketing of [firearms]." 15 U.S.C. § 7903(5)(A)(iii). In *Ileto v. Glock, Inc.*, the Ninth Circuit held that the term "applicable" denotes statutes that "target the firearms industry *specifically*," although they need not "pertain *exclusively* to the firearms industry." 565 F.3d 1126, 1134 (9th Cir. 2009) (emphases added). Thus, a predicate statute is any law that specifically, albeit not necessarily exclusively, pertains to the sale or marketing of firearms. AB 1594 requires firearms industry members to establish, implement, and enforce "reasonable controls" designed to prevent downstream illegal trafficking, unlawful misuse, or inventory theft. AB 1594 explicitly, *specifically*, and unambiguously applies to the sale and marketing of firearms products. AB 1594 therefore qualifies as a predicate statute. A lawsuit alleging a knowing violation of AB 1594 that proximately caused harm would thus fall squarely within PLCAA's predicate exception.

## II.     Liability for Violation of AB 1594 under the Predicate Exception Is Entirely Consistent with PLCAA's Structure.

PLCAA does not operate as an absolute liability shield for the firearms industry, but rather carefully circumscribes the jurisdiction of federal and state courts to hear only certain claims against firearms industry defendants for harms resulting from third-party unlawful misuse of firearms products. Three constitutional principles inform the scope of claims that PLCAA allows to proceed: the individual right to keep and bear arms, separation of powers, and federalism. Congress explicitly endorsed these principles in PLCAA's legislative findings and statement

of purpose.[2] 15 U.S.C. § 7901(a)-(b). By interpreting the predicate exception in light of these structural principles, it is clear that AB 1594 is precisely the type of state statute permitted and anticipated by PLCAA.

    A.    *PLCAA's Explicit Commitment to Protecting Second Amendment Rights Is Expressed in the Predicate Exception's Knowledge and Proximate Causation Requirements*

PLCAA's legislative findings and stated purposes affirm PLCAA's explicit commitment to the individual right to keep and bear arms under the Second Amendment:

> (1) The Second Amendment to the United States Constitution provides that the right of the people to keep and bear arms shall not be infringed.

> (2) The Second Amendment to the United States Constitution protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, to keep and bear arms.

15 U.S.C. § 7901(a)(1)-(2). Similarly, a subsequent finding states that, "[t]he possibility of imposing liability on an entire industry for harm that is solely caused by others . . . threatens the diminution of a basic constitutional right and civil liberty . . . ." *Id.* § 7901(a)(6). This concern is stated explicitly in the statute's purposes:

---

[2] The Legal Scholars recognize that prefatory material cannot eclipse the plain meaning of the predicate exception. However, in this case, the prefatory material is in complete accord with the plain meaning of the predicate exception. The Legal Scholars demonstrate a congruent relationship between the prefatory material and the text of the operative provisions, including the predicate exception. Thus, both a narrow focus on the text of the predicate exception and attention to PLCAA's prefatory material compel the conclusion that a lawsuit alleging a violation of AB 1594 could satisfy the predicate exception. *See Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) (the determination of "whether [] language at issue has a plain and unambiguous meaning" is made by referring to the "language itself, the specific context in which that language is used, and the broader context" of the statute or agreement) (internal citation omitted).

"To preserve a citizen's access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting." *Id.* § 7901(b)(2).

To protect the individual right of citizens to keep and bear arms, PLCAA preempts litigation against the firearms industry that could restrict the availability of firearms in the lawful civilian market. Accordingly, the predicate exception imposes two jurisdictional requirements to limit the claims that may proceed against the industry. First, it imposes the heightened mental state requirement that any actionable violation be made "knowingly," thus limiting litigation to allegations of deliberate industry misconduct, while protecting firearms manufacturers and sellers from lawsuits based on unwitting negligence. The predicate exception's knowledge requirement exposes bad actors within the industry to possible lawsuits, while protecting law abiding manufacturers and sellers who make honest mistakes.

Second, the predicate exception imposes a proximate cause requirement. This limits litigation to allegations that a manufacturer or seller *actively facilitated* the unlawful misuse of its products, while shielding the industry from vicarious liability for harms caused *solely* by the illegal misconduct of others. *See* 15 U.S.C. § 7901(b)(1). The proximate cause requirement thereby ensures that gun manufacturers and sellers may be held accountable for enabling criminal activity but are protected against guilt by association.

Lawsuits claiming knowing violations of AB 1594 that proximately cause harm would thus fall squarely within the scope of permissible claims allowed by the predicate exception. As such, they are entirely consistent with PLCAA's commitment to defending the individual right of citizens to keep and bear arms as they shield the gun industry from claims based on unwitting negligence and vicarious liability.

**B.** *PLCAA's Explicit Commitment to Separation of Powers is Expressed in the Predicate Exception's Distinction Between Legislatively Created Causes of Action, Which May Serve as the Basis for a Lawsuit Against the Industry, and Judge-Made Causes of Action, Which May Not.*

PLCAA is a tort reform statute. A defining characteristic of tort reform is the preemption of state common law causes of action by alternative statutory liability rules. This represents a specific vision of the Constitution's separation of powers among different branches of government. Those who espouse this vision believe that courts encroach on legislative supremacy in the policymaking realm when they create new theories of recovery under the common law.

PLCAA's preemption of state common law causes of action is reflected in several of its provisions. One of PLCAA's findings identifies novel common law actions as an area of particular concern:

> The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and *do not represent a bona fide expansion of the common law*. The possible sustaining of these actions by a maverick judicial officer or petit jury *would expand civil liability in a manner never contemplated by the framers of the Constitution*, by Congress, or by the legislatures of the several States.

15 U.S.C. § 7901(a)(7) (emphases added). This finding reflects a conception of separation of powers common among advocates of tort reform, according to which the expansion of civil liability by common law courts is an encroachment on the legislative function. *See* Timothy D. Lytton, *Using Litigation to Make Public Health Policy: Theoretical and Empirical Challenges in Assessing Product Liability, Tobacco, and Gun Litigation*, 32 J.L. MED. & ETHICS 556, 557 (2004). PLCAA explicitly states the separation of powers concern in the immediately subsequent finding:

> The liability actions commenced or contemplated by the Federal Government, States, municipalities, private interest groups and others attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees thereby threatening the Separation of Powers doctrine . . . .

15 U.S.C. § 7901(a)(8).

PLCAA's exceptions reflect its central concern with preempting civil liability actions based on common law. Most of the exceptions reference statutory, rather than common law, standards of conduct. Three of the exceptions—including the predicate exception—apply to a manufacturer who violates federal or state statutes governing the sale, marketing, transfer, and ownership of firearms or ammunition. 15 U.S.C. § 7903(5)(A)(i), (iii), (vi). A fourth exception, for negligence *per se* (*id.* § 7903(5)(A)(ii)), similarly requires a statutory violation as the basis for liability. *See* Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, THE LAW OF TORTS § 148 (2d ed. 2016) ("Dobbs") (negligence *per se* rests on the violation of a *statutory* standard). And the exception for negligent entrustment (15 U.S.C. § 7903(5)(A)(ii)) includes a *statutory* definition of negligent entrustment provided by PLCAA itself.[3] *Id.* § 7903(5)(B).

---

[3] Several courts have held that this definition does not create a new statutory standard for negligent entrustment but merely authorizes claims based on state common law doctrines of negligent entrustment because, in the section immediately following the definition of negligent entrustment, PLCAA includes a "[r]ule of construction" stating that "no provision of this chapter shall be construed to create a public or private cause of action or remedy." 15 U.S.C. § 7903(5)(C); *Ileto*, 565 F.3d at 1135 n.6 ("While Congress chose generally to preempt all common-law claims, it carved out an exception for certain specified common-law claims (negligent entrustment and negligence per se)."); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) ("Although the PLCAA identifies negligent entrustment as an exception to immunity, it does not create the cause of action. . . . Accordingly, the claim arises under state law."). Notwithstanding this "rule of

To be sure, some of PLCAA's findings do suggest more sweeping preemption that makes no distinction between common law and statutory bases for liability. *See, e.g.*, 15 U.S.C. § 7901(a)(5) (broadly declaring that businesses engaged in lawful interstate firearms and ammunitions marketing, distribution, importation, and sale should not be liable for the harm caused by third party criminal or unlawful misuse of firearm products that function as designed and intended), *see also id.* § 7901(a)(3). However, PLCAA's exceptions flatly contradict any implication that PLCAA preempts all liability for statutory violations by gun industry members.

Other provisions in the "Findings" and "Purposes" sections also signal limits on PLCAA preemption. For example, PLCAA's first stated purpose is:

> To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm *solely caused by* the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

*Id.* § 7901(b)(1) (emphasis added). The qualifying phrase "solely caused by," as applied to the predicate exception, indicates that PLCAA preemption does not apply to instances where wrongdoing by a manufacturer, distributor, dealer, or importer is a proximate cause of the harm caused by the criminal misuse of a firearm.[4]

---

construction," PLCAA's definition of negligent entrustment must, at the very least, preempt any state common law doctrines of negligent entrustment that establish a threshold for liability that is lower than the one defined by 15 U.S.C. § 7903(5). Otherwise, the definition would be rendered surplusage. *Yates v. United States*, 574 U.S. 528, 543 (2015) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.") (citation omitted).

[4] This stands in contrast to section 7903(5)(A)(v) where "the discharge of a product [] caused by a volitional act that constituted a criminal offense [] shall be considered *the sole proximate cause* of any resulting death, personal injuries or

LEGAL SCHOLARS' *AMICI CURIAE* BRIEF

To uphold separation of powers principles endorsed by the statutes findings and purposes, 15 U.S.C. § 7901(a)(7)–(8), PLCAA preempts lawsuits against the industry *only when* the claims rely solely on judicially-created common law liability, thereby asserting the Legislature's exclusive authority over the creation of legal duties related to the manufacture and sale of firearms. Accordingly, the predicate exception permits lawsuits against the gun industry for harms resulting from the unlawful third-party misuse of firearms products only where, as here, such lawsuits are based on the violation of legislatively enacted statutes.

C. *PLCAA's Explicit Commitment to Federalism is Expressed in the Predicate Exception's Invitation to State Legislatures to Enact Statutes that Impose Obligations and Prohibitions on the Firearms Industry.*

PLCAA's commitment to federalism is explicit in its stated purpose: "To preserve and protect the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between the sister States." 15 U.S.C. § 7901(b)(6). PLCAA honors this commitment by preserving the ability of states to regulate the industry in accordance with regional variation in attitudes about gun ownership and responses to firearms-related violence that account for state-specific concerns and priorities. Accordingly, the predicate exception allows both federal *and state* statutes to serve as predicate statutes: PLCAA does not apply to "an action in which a manufacturer or seller of a qualified product knowingly violated a *State* or Federal statute applicable to the sale or marketing of the product . . . ." *Id.* § 7903(5)(A)(iii) (emphasis added).

---

property damage . . ." *Id.* (emphasis added). Where, as here, Congress chose to circumscribe proximate causation in one element of the statute (15 U.S.C. § 7903(5)(A)(v)) but not another (the predicate exception), "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted).

### III. The NSSF's Idiosyncratic Definition of a Predicate Statute Contradicts the Plain Meaning of the Predicate Exception and Its Statutory Context.

The NSSF's definition of a predicate statute does not appear in any PLCAA provision and departs from the plain meaning clearly articulated in the statute. According to the NSSF, the predicate exception exempts only actions predicated on laws that "impose concrete obligations and prohibitions that a firearm industry member can understand and comply with, not statutes that merely impose general duties of care." Compl. ¶ 94. The NSSF argues that, under this definition, AB 1594 cannot serve as a predicate statute because it imposes a general duty of care on firearms industry members to establish "reasonable controls" to prevent third-party criminal misuse of its products. *Id.* ¶ 98. According to the NSSF, a general duty of care is too vague to qualify as a predicate statute because a firearm industry member may not be able to understand or comply with an "undefined" duty. This argument relies on mischaracterization of Ninth Circuit precedent, selective reading, and distortions of well-established legal doctrine.

#### A. Under Ileto*, Statutes that Specifically Target the Sale and Marketing of Firearms—Including those that Impose General Standards of Reasonable Care—Qualify as Predicate Statutes.*

The NSSF repeatedly cites the Ninth Circuit's opinion in *Ileto v. Glock* as authority for its restrictive interpretation of the predicate exception. Compl. ¶ 94; Pl.'s Mem. in Supp. Of Mot. For Preliminary Injunction (Jun. 13, 2023) at 12, 13, ECF No. 14 ("Pl.'s Mem."). However, the NSSF mischaracterizes *Ileto*'s holding. *Ileto* addressed whether the codification of the "general tort claims" of public nuisance and negligence in California's Civil Code can serve as a predicate statute under the predicate exception. *Ileto*, 565 F.3d at 1136, 1138. The Ninth Circuit said no, holding that such general nuisance laws did not "pertain specifically to sales and manufacturing activities" or "target the firearms industry specifically." *Id.* at 1134.

*See also id*. at 1136 (concluding that, in delineating the scope of the predicate exception, "Congress had in mind only [] statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry—rather than general tort theories that happen[] to have been codified by a given jurisdiction."). However, AB 1594 *does* specifically target the firearms industry and thus unambiguously qualifies as a predicate statute. It imposes legal duties that pertain specifically to the manufacturing, marketing, and sales activities of the firearms industry rather than referencing general tort theories, such as generic public nuisance and negligence.

The NSSF misconstrues the Ninth Circuit's distinction between codified "general tort claims" and predicate statutes. In *Ileto*, the court explained that codified "general tort claims" are "subject to the same 'judicial evolution' as ordinary common-law claims in jurisdictions that have not codified common law," and "[t]hat 'judicial evolution' was precisely the target of the PLCAA" preemption. *Ileto*, 565 F.3d at 1136. The California Civil Code sections at issue in *Ileto* codified generic causes of action for public nuisance and negligence. *Id*. at 1132-33. The "judicial evolution" to which the court referred was the novel expansion of these common law theories from the conduct to which they were traditionally applied— e.g., generating air or water pollution in the case of public nuisance and causing routine accidents for negligence—to the careless marketing and sale of firearms. *Id*. at 1136. Citing *Ileto*, the NSSF erroneously argues that reliance on general duties of reasonable care "invite[s] the same 'judicial evolution' that was precisely the target of PLCAA." Pl.'s Mem. at 12.

But the NSSF's argument confuses the *expansion* of general theories of tort liability to cover new activities—an iterative and evolutionary process of doctrinal innovation through judicial interpretation of the common law—with the *variability* of reasonable care standard, which, in this case, is mandated by legislation and

merely applied in well-established fashion by judges and juries. The NSSF's suggestion that the diverse application of the reasonable care standard is the type of judicial innovation proscribed under *Ileto* is a conceptual mistake that elides the difference between doctrinal innovation and a well-established doctrinal standard, which, in this case, is "reasonable care."

In sum, the *Ileto* court held that codified "general tort law claims" could not serve as predicate exceptions because they would require a process of "judicial evolution" to apply them to the marketing and sale of firearms. 565 F.3d at 1136. This concern is foreign to AB 1594, which specifically targets the marketing and sale of firearms and requires no judicial doctrinal innovation to apply the general standard of reasonable care that it imposes on the industry. Nothing in the *Ileto* court's holding or analysis supports the NSSF's restrictive interpretation of the predicate exception, which would, if implemented, inappropriately exclude legislation that imposes a general duty of reasonable care specifically on the marketing and sale of firearms.

### B. General Standards of Reasonable Care are Susceptible to Knowing Violation.

The NSSF argues that, because the predicate exception requires a knowing violation, all predicate statutes must impose "some requirement or obligation sufficiently concrete that an industry member can actually knowingly violate it at the time of manufacture or sale." Pl.'s Mem. at 13. According to the NSSF, because duties of reasonable care are too amorphous to engender a knowing violation, statutes such as AB 1594 that require reasonable controls cannot serve as predicate statutes. This argument incorrectly assumes that standards of reasonable care are not susceptible to knowing violation.

Knowledge is a mental state. Reasonable care is a standard of conduct. Conceptually, these are fully compatible with one another. That is, it makes perfect

sense to assert that a person knowingly failed to exercise reasonable care. For example, a firearms seller knowingly fails to exercise reasonable care if the seller knows of reasonable precautions that would reduce the risk of illegal trafficking, unlawful misuse, or inventory theft, but deliberately refrains from taking such precautions.

That a reasonable standard of care can be knowingly violated is a matter of hornbook tort law. Dobbs' *Law of Torts*, the leading treatise on American tort law, offers the examples of driving while intoxicated and drag racing on a public highway as illustrative circumstances where a defendant is liable for activity that they know creates an unreasonable risk of harm to others. Dobbs §§ 32, 140.[5]

Thus, the NSSF's assertion that standards of conduct based on reasonable care are not susceptible to knowing violation is conceptually wrong and doctrinally unfounded.

### C.   *The Examples in the Predicate Exception Explicitly Encompass Predicate Statutes that Impose Duties of Care.*

The predicate exception includes examples. *See* 15 U.S.C. § 7903(5)(A)(iii). The NSSF asserts that the predicate statutes in these examples impose "concrete" obligations and prohibitions, Pl.'s Mem. at 13, and thus, the that the phrase "applicable to the sale and marketing of the [firearm] product" must be read,

_____

[5]   Indeed, the well-established doctrinal concept of recklessness in torts, by definition, combines the mental state of knowledge with the standard of conduct of reasonable care. According to Dobbs: "In civil cases, courts find conduct to be reckless, willful or wanton when two elements concur. First, the conduct must not only create an unreasonable risk of harm to others; it must create a high degree of risk or a risk of very serious harm, or, if a lesser risk or less probable risk, then one that is easily avoided. Second, the defendant must be conscious of the risk and proceed without concern for the safety of others." Dobbs § 32.

contrary to its plain meaning, to encompass only statutes that impose "concrete" obligations and prohibitions. *Id.* According to the NSSF, under this restrictive reading, AB 1594, which imposes a duty of care, cannot serve as a predicate statute. This argument mischaracterizes the predicate exception's examples.

The predicate exception's examples of actionable claims illustrate a category of statutory standards into which AB 1594's "reasonable controls" standard fits comfortably. The examples include liability for failure to take a required action, such as the failure to make an appropriate entry in a record required for the transfer of a firearm (15 U.S.C. § 7903(5)(A)(iii)(I)), and liability for engaging in any conduct that facilitates a third party's illegal conduct, such as aiding and abetting the transfer of a firearm to a legally ineligible person (*id.* § 7903(5)(A)(iii)(II)). In both cases, liability only attaches when the gun industry member *knowingly* fails to take the required action or *knowingly* facilitates an illegal transfer. Just as with the category of statutory standards illustrated by these examples, under the predicate exception, AB 1594 would impose liability on a gun industry member who *knowingly* fails to establish reasonable controls and thereby *knowingly* facilitates the illegal transfer of firearms through illegal sales or inventory theft. AB 1594 § 3(g)(1)-(2).

### D.   *PLCAA's Other Exceptions Include Duties of Reasonable Care.*

The NSSF asserts that all PLCAA's other exceptions "are limited to circumstances in which the manufacturer or seller itself engaged in some well-defined type of wrongful conduct, such as claims for design or manufacturing defect, illegal transfer, negligent entrustment, and breach of contract or warranty." Compl. ¶ 21. The NSSF infers from these other exceptions that the predicate exception is also limited to statutes that prohibit specific conduct. Pl.'s Mem. at 13-14. According to this argument, since AB 1594 requires reasonable controls, it cannot serve as a predicate statute. *Id.*

This argument fails because several of the exceptions cited by the NSSF do, in fact, rely on reasonable care standards rather than a "well-defined type of wrongful conduct." Compl. ¶ 21. The exception for design defect, 15 U.S.C. § 7903(5)(A)(v), imposes a duty on firearms manufacturers to adopt a *reasonable* alternative design if such an alternative is feasible. Dobbs § 458 ("In many and perhaps most design defect cases, the plaintiff will have to prove that a safer, *reasonable* alternative design was available to the defendant, and that the failure to adopt that design would have prevented the plaintiff's harm from occurring.") (emphasis added); *see also* Restatement (Third) of Torts: Prod. Liab. § 2 (Am. L. Inst.1998). The exception for negligent entrustment (section 7903(5)(A)(ii)) imposes a duty on firearms sellers to exercise *reasonable* care to discern whether a purchaser "is likely to [] use the product in a manner involving unreasonable risk of physical injury to the person or others." 15 U.S.C. § 7903(5)(B); Dobbs § 422 ("duty to use reasonable care to control permissive users to prevent them from negligently or intentionally inflicting harm . . . is closely related to the owner's responsibility for negligent entrustment of chattels to people who foreseeably might use the chattel in a way dangerous to themselves"). The exception for breach of warranty (15 U.S.C. § 7903(5)(iv)) imposes, in the case of an implied warranty of merchantability, a duty on a firearms manufacturer to conform its representations concerning a product to the common practices of the industry. U.C.C. § 2-314(3) ("implied warranties may arise from course of dealing or usage of trade").

In each of these exceptions, PLCAA imposes a general duty on firearms manufacturers to exercise reasonable care regarding an identifiable risk, rather than imposing specific design, manufacturing, or sales parameters. Design defect doctrine does not specify the design that the defendant-manufacturer should have adopted; negligent entrustment doctrine does not specify what measures a seller should have taken to discern the level of risk posed by the purchaser before selling;

and implied warranty of merchantability doctrine does not specify what the industry custom requires. Similarly, AB 1594 does not specify the specific controls a firearms industry member must establish to prevent the risk of illegal sale of its products (AB 1594 § 3(g)(1)), or theft or loss of its inventory (AB 1594 § 3(g)(2)). Thus, contrary to the NSSF's argument, the context provided by PLCAA's exceptions suggests that the PLCAA does not limit firearms industry liability to prohibitions of a well-defined type of wrongful conduct.

### E.    A Predicate Statute Need Not Reference a State of Mind or a Proximate Cause.

The NSSF next asserts that, since liability under the predicate exception requires knowing violation and proximate cause, a predicate statute itself must reference both these elements. Compl. ¶¶ 98, 99; Pl.'s Mem. at 14-15. The NSSF argues that, since AB 1594 does not require a violation to be knowing and since it does not require proximate causation, AB 1594 cannot serve as a predicate statute. Compl. ¶¶ 98, 99. This argument rests on a conceptual error and a distortion of well-established legal doctrine.

The NSSF conflates the predicate exception's description of a predicate statute (one that is "applicable to the sale or marketing" of a firearm) with the conditions under which its violation can serve as the basis of a civil lawsuit (when it is knowingly violated in a manner that proximately causes harm). Whether a statute satisfies the definition of a predicate statute is a conceptually prior to and distinct issue from whether violation of the statute fulfills the conditions necessary to qualify for the predicate exception. These conditions—knowing violation and proximate cause—have no bearing on whether a statute is, definitionally, a predicate statute.

Moreover, the predicate exception's examples clearly illustrate that predicate statutes need not make any reference to a knowing violation. Neither of the example predicate statutes includes any mention of a mental state. PLCAA's first example

refers to predicate statutes that prohibit specified forms of conduct (i.e., the making of a false recordkeeping entry, the failure to make an appropriate recordkeeping entry, or the making of a false statement in a firearms transaction [15 U.S.C. § 7903(5)(A)(iii)(I)]), and its second example refers to a predicate statute that identifies categories of individuals prohibited from possessing or receiving a firearm (*id.* § 7903(5)(A)(iii)(II) [specifically citing 18 U.S.C. § 922(g), (n), neither of which references any mental state requirement]). Both qualify as predicate statutes, but do not reference a mental state—knowing or otherwise. Thus, to qualify for the exception, a lawsuit must allege knowing violation of a predicate statute; however, the statute itself need not reference any mental state.

Moreover, the NSSF's assertion that AB 1594's statutory definition of proximate cause is inconsistent with proximate cause "in the traditional sense" (Compl. ¶ 99)—aside from being irrelevant for the purposes of defining a predicate statute or applying the predicate exception—is incorrect as a matter of well-established tort doctrine. PLCAA prohibits lawsuits against manufacturers and sellers for harm "solely caused" by third-party criminal misuse of firearms products. 15 U.S.C. § 7901(b)(1) (purpose of PLCAA "[t]o prohibit causes of action . . . for the harm solely caused by the criminal or unlawful misuse of firearm products"). This prohibition is reflected in the predicate exception's proximate cause requirement, which subjects a manufacturer or seller to liability for harm caused by third-party unlawful misuse of firearms products *only when* the manufacturer's or seller's knowing violation of a predicate statute was a proximate cause of the harm. In such cases, the third-party unlawful misuse is not the sole cause of the harm. By foreseeably increasing the risk of third-party misuse, the manufacturer's or seller's misconduct is also a proximate cause of the harm. Liability under such circumstances in no way contradicts the goal of PLCAA to shield firearms manufacturers and sellers from *vicarious* liability for harms "solely caused" by

17

1  third-party criminal misuse. *See* 15 U.S.C. § 7901(b)(1). Indeed, it fulfills the
2  purpose of the predicate exception.

3      When a gun industry defendant's knowing violation of a predicate statute is a
4  proximate cause of harm resulting from criminal misuse, the defendant is subject to
5  liability under the predicate exception. As a matter of basic tort law, such liability is
6  unremarkable. Liability for foreseeably increasing the risk of third-party criminal
7  misconduct is commonplace, sometimes referred to as an "enabling" tort, and
8  examples are prevalent in American jurisprudence. *See, e.g.*, *Ghezavat v. Harris*, 40
9  Cal. App. 5th 555, 559 (2019) ("It is negligence to permit a third person to use a
10 thing or to engage in an activity which is under the control of the actor, if the actor
11 knows or should know that such person intends or is likely to use the thing or to
12 conduct himself in the activity in such a manner as to create an unreasonable risk of
13 harm to others." [quoting Restatement (Second) of Torts § 308 (1965)]); *Carrera v.*
14 *Maurice J. Sopp & Son*, 177 Cal. App. 4th 366, 383 (2009) (holding that a trucking
15 company could be liable for deaths caused by a drunk parolee walking through the
16 company's unlocked gate, stealing a tow truck, and driving it recklessly into a bus
17 stop); *Steinle v. United States*, 2020 WL 60204, at *6-*7 (N.D. Cal. Jan. 6, 2020),
18 *aff'd*, 11 F.4th 744 (9th Cir. 2021) (concluding that an individual who left his gun in
19 his unlocked car could be liable for the criminal misuse of his stolen firearm); *see*
20 *also Hergenrether v. East*, 61 Cal. 2d 440, 445 (1964) (holding that the owner of a
21 car who left his vehicle unlocked in a neighborhood "frequented by persons who
22 had little respect for the law and the rights of others" could be liable for harms
23 caused by the misuse of his stolen vehicle). *See generally* Robert Rabin, *Enabling*
24 *Torts*, 49 DePaul L. Rev. 435 (1999).

25     If a gun industry defendant's knowing violation of a predicate statute could
26 never proximately cause harm enacted through third-party misuse of its products,
27 the predicate exception's proximate cause requirement would nullify the exception

28

altogether. This is apparent from the structure of statute: the only lawsuits that are subject to PLCAA preemption are lawsuits for harm *resulting from unlawful third-party misuse*, 15 U.S.C. § 7903(5)(A)(iii), and, therefore, if the predicate exception permits any lawsuits at all (and it must, otherwise it would be a nullity), then it must permit a subset of lawsuits in which the harm resulted from unlawful third-party misuse.

AB 1594's proximate cause provision, whereby "an intervening act by a third party, including, but not limited to, criminal misuse of a firearm-related product, shall not preclude a firearm industry member from liability" is entirely consistent with well-established tort doctrine that permits third-party liability where the risk of criminal misuse was foreseeable.

## <u>CONCLUSION</u>

For the foregoing reasons, this court should deny the NSSF's motion for a preliminary injunction.

Dated: 1 August 2023                    By:  <u>*Jennifer M. French*</u>

*Attorneys for Legal Scholars as*

*Amici Curiae*

Email: jenn@pattersonlawgroup.com

# APPENDIX A: LIST OF *AMICI CURIAE*

The *amici* listed below join this brief as individuals, not as representatives of their respective universities. Institutional affiliations are provided only for purposes of identification.

**Hillel Y. Levin**
Alex W. Smith Professor of Law
*University of Georgia*

**Joseph Blocher**
Lanty L. Smith '67
Professor of Law
*Duke University*

**Scott Burris**
Professor of Law
*Temple University*

**William S. Dodge**
Martin Luther King, Jr. Professor of
Law and John D. Ayer Chair in
Business Law
*University of California, Davis*

**John J. Donohue**
Carlsmith Professor of Law
*Stanford University*

**Daniel Greenwood**
Professor of Law
*Hofstra University*

**Alexandra D. Lahav**
Professor
*Cornell Law School*

**Timothy D. Lytton**
Regents' Professor
*Georgia State University*

**Linda Jellum**
Professor of Law
*University of Idaho College of Law*

**Dorit Rubinstein Reiss**
Professor of Law
*UC Law San Francisco*

**Michael L. Rustad**
Thomas F. Lambert, Jr.
Professor of Law
*Suffolk University Law School*

**Wendy Wagner**
Richard Dale Endowed Chair in Law
*University of Texas*

**John Fabian Witt**
Allen H. Duffy Class of 1960
Professor of Law
*Yale University*