PAUL D. CLEMENT[*]
ERIN E. MURPHY[*]
MATTHEW D. ROWEN (Cal. Bar # 292292)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
matthew.rowen@clementmurphy.com

[*] admitted *pro hac vice*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Shooting Sports Foundation, <br><br> *Plaintiff,* <br><br><br> v. <br><br> Rob Bonta, Attorney General of California, <br><br><br> *Defendant.* | Case No. 3:23-cv-00945-AGS-KSC <br><br><br> **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: August 11, 2023 <br> Time: 3:30 p.m. <br> Courtroom: 5C <br> Judge: Hon. Andrew G. Schopler <br> Action Filed: 5/23/2023 |

# TABLE OF CONTENTS

ARGUMENT ................................................................................................. 1

I.      NSSF Has Established Standing And Ripeness. ............................................. 1

II.     NSSF Is Likely To Succeed On The Merits Of Its Claims ............................ 4

        A.      AB 1594 Violates the Second Amendment ........................................ 4

        B.      AB 1594 Is Preempted ...................................................................... 8

        C.      AB 1594 Violates the First Amendment ...........................................11

        D.      AB 1594 Is Void for Vagueness......................................................... 13

        E.      AB 1594 Unconstitutionally Regulates Out-of-State Conduct .......... 14

III.    The Remaining Factors All Favor Injunctive Relief .................................... 15

CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Yellen*,
    34 F.4th 841 (9th Cir. 2022).................................................................2

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015)..........................................................................11

*Bankshot Billiards, Inc. v. City of Ocala*,
    634 F.3d 1340 (11th Cir. 2011) .........................................................3

*Cal. Trucking Ass'n v. Bonta*,
    996 F.3d 644 (9th Cir. 2021)..............................................................2

*Clark v. City of Seattle*,
    899 F.3d 802 (9th Cir. 2018)..............................................................3

*Craig v. Boren*,
    429 U.S. 190 (1976)..........................................................................15

*Daniels Sharpsmart, Inc. v. Smith*,
    889 F.3d 608 (9th Cir. 2018)............................................................15

*Del. State Sportsmen's Ass'n, Inc.*
    *v. Del. Dep't of Safety & Homeland Sec.*,
    2023 WL 2655150 (D. Del. Mar. 27, 2023) .................................5, 6

*Dist. of Columbia v. Heller*,
    554 U.S. 570 (2008)........................................................................6, 7

*English v. Gen. Elec. Co.*,
    496 U.S. 72 (1990)............................................................................10

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    143 S.Ct. 1444 (2023).......................................................................11

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009).................................................4, 8, 9, 11

*In re Acad., Ltd.*,
    625 S.W.3d 19 (Tex. 2021) ...............................................................11

*In re Coleman*,
   560 F.3d 1000 (9th Cir. 2009)..................................................................4

*Lopez v. Candaele*,
   630 F.3d 775 (9th Cir. 2010)....................................................................3

*Moore v. Urquhart*,
   899 F.3d 1094 (9th Cir. 2018)................................................................11

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   142 S.Ct. 2111 (2022)..........................................................................5, 7

*Nat'l Audubon Soc'y, Inc. v. Davis*,
   307 F.3d 835 (9th Cir. 2002)....................................................................1

*National Pork Producers Council v. Ross*,
   143 S.Ct. 1142 (2023) ....................................................................14, 15

*NSSF v. Platkin*,
   2023 WL 1380388 (D.N.J. Jan. 31, 2023)..............................................10

*Reno v. Cath. Soc. Servs., Inc.*,
   509 U.S. 43 (1993)..................................................................................4

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015)................................................................15

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)..............................................................................11

*Staples v. United States*,
   511 U.S. 600 (1994)................................................................................5

*State ex rel. Becerra v. Sessions*,
   284 F.Supp.3d 1015 (N.D. Cal. 2018) .....................................................4

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014).......................................................................1, 2, 3

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022).............................................................1, 4

*Tracy Rifle & Pistol LLC v. Harris*,
    339 F.Supp.3d 1007 (E.D. Cal. 2018) ................................................12

*Twitter, Inc. v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022) ..........................................................3

*Unified Data Services v. FTC*,
    39 F.4th 1200 (9th Cir. 2022) ..........................................................3

*United States v. Connelly*,
    2023 WL 2806324 (W.D. Tex. Apr. 6, 2023) ....................................5

*United States v. Idaho*,
    623 F.Supp.3d 1096 (D. Idaho 2022) ................................................8

*Valle Del Sol Inc. v. Whiting*,
    709 F.3d 808 (9th Cir. 2013) ..........................................................12

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982) ........................................................................13

*VIP of Berlin, LLC v. Town of Berlin*,
    593 F.3d 179 (2d Cir. 2010) ............................................................13

**Statutes**

15 U.S.C. §7901(a)(6) ......................................................... 9, 13

15 U.S.C. §7901(a)(7) ...........................................................8, 9

15 U.S.C. §7901(b)(1) ...........................................................10

15 U.S.C. §7902(a) ............................................................. 8, 11

15 U.S.C. §7903(5)(A) ....................................................... 8, 10

42 U.S.C. §1983 ................................................................11

Cal. Civ. Code §3273.50(d)(3) ...............................................1

Cal. Civ. Code §3273.50(g)(2) ........................................... 7, 14

Cal. Civ. Code §3273.51(a) ....................................................14

Cal. Civ. Code §3273.51(a)-(c)...................................................................1, 2

Cal. Civ. Code §3273.51(b)(1).................................................................. 7, 14

Cal. Civ. Code §3273.51(b)(2)............................................................. 1, 7, 14

Cal. Civ. Code §3273.51(c).........................................................................5

Cal. Civ. Code §3273.51(c)(2)..................................................................1, 6

Cal. Civ. Code §3273.52(d)(1)...................................................................14

Cal. Civ. Code §3273.52(d)(2).....................................................................7

Cal. Civ. Code §3273.52(d)(4).....................................................................7

Cal. Civ. Code §3273.52(f) ..................................................................... 7, 10

**Other Authority**

Compl., *City of Buffalo v. Smith & Wesson Brands, Inc.*,
    No. 1:23-cv-00066 (W.D.N.Y. Jan. 23, 2023) ....................................13

AB 1594 is unconstitutional and preempted.  In trying to defend it, the AG mischaracterizes NSSF's claims, fails to respond to several of NSSF's arguments, and ignores contrary precedent.  The Court should enjoin enforcement of AB 1594 as well as §1021.11—the latter of which the AG does not even bother to defend.

## ARGUMENT

## I.   NSSF Has Established Standing And Ripeness.

1. The idea that NSSF lacks standing here blinks reality.  Take one example:  AB 1594 makes it unlawful to manufacture, market, or sell a firearm "designed … in a manner that is targeted at minors."  Cal. Civ. Code §3273.51(c)(2)(C).  Many NSSF members manufacture, market, and sell "youth-model firearms," which are "smaller size and lighter weight" than standard models—and "obviously 'designed … in a manner that is targeted at minors.'"  Cupero Decl. ¶15.  The AG does not deny that such products fall within AB 1594's ambit, or that marketing them to parents who want to take their kids hunting is now illegal.  Another example:  NSSF members make and sell AR-style rifles out of state; but as the AG admits (at 10), they now face liability for that conduct if a citizen brings into California an AR rifle that was lawfully made and acquired out of state.  *See* §§3273.50(d)(3), .51(a)-(c).  Furthermore, the AG recognizes that industry members must incur at least some costs to, e.g., "ensure that [they] do[] not sell" any of their products to "a downstream distributor or retailer … who fails to establish, implement, and enforce reasonable controls."  *See* §3273.51(b)(2).  No more is required for Article III.  *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855-56 (9th Cir. 2002) ("alleged economic injury … directly traceable" to challenged law is enough for standing).

So it should come as no surprise that NSSF amply satisfies the relevant test.  "*Driehaus* set the general standard for pre-enforcement standing."  *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).  Under *Driehaus*, Article III is met when plaintiffs "inten[d] to engage in a course of conduct arguably affected with a constitutional

1

Reply in Supp. of Pls.' Mot. for Prelim. Inj. (3:23-cv-00945-AGS-KSC)

interest," but that conduct is "arguably … proscribed by [the] statute," and their fear of enforcement is "not imaginary or wholly speculative."  573 U.S. at 160-61.  The AG does not contest the first two elements.  Instead, he claims NSSF lacks standing because it has not alleged that "any of its members engage in business practices that violate AB 1594, or have a 'concrete plan' to do so."  AG.Br.3.  But "the Supreme Court has instructed that plaintiffs need not do that" to satisfy *Driehaus*.  *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022); *see Driehaus*, 573 U.S. at 163.  A pre-enforcement plaintiff of course must have a "sufficiently realistic" "feared future injury," but need not "explicitly confess to intended future conduct that is violative of the law it seeks to challenge."  *Arizona*, 34 F.4th at 849-51.  Absent a promise that the defendant will not enforce the law in the way the plaintiff fears—which the AG has not made here—all that is required is a concrete plan to engage in conduct that "more than … hypothetical[ly]" could be said to violate the law.  *Id.* at 850.

NSSF soars over that bar.  Even putting aside the above examples, AB 1594 imposes liability for licensed commerce in arms that the AG deems "unreasonable."  *See* §3273.51(a)-(c).  Given the breadth (and uncertain scope) of that prohibition, NSSF's members (whose entire business is licensed commerce in arms, *see, e.g.*, Compl. ¶12; Reid Decl. ¶¶7-8) face a very real threat of being sued simply for continuing to operate.  Indeed, some are already facing exactly the kinds of suits under similar state laws that they fear the AG will use AB 1594 to bring—yet the AG has conspicuously declined to disavow his intention to bring such claims.  This is a paradigm case for pre-enforcement review.  *See Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ("refusal to disavow enforcement … is strong evidence that the state intends to enforce" and "members face a credible threat").[1]

---

[1] It makes no difference that the AG has not yet enforced AB 1594, "which only just took effect on July 1."  AG.Br.4.  "Where the challenged statute is new, as here, the history of past enforcement carries little, if any weight."  *Arizona*, 34 F.4th at 850.

The AG's cited cases are at the opposite end of the spectrum.  In *Lopez v. Candaele*, "a student's First Amendment challenge to a community college sexual harassment policy," the student lacked standing because his intended conduct—giving a speech on religious topics, including "read[ing] a dictionary definition of marriage as being a union between a man and a woman"—did not even arguably come within the ambit of the challenged policy.  630 F.3d 775, 781-82, 788-91 (9th Cir. 2010).  And in *Unified Data Services v. FTC*, a challenge to a regulation of soundboard technology, the plaintiffs failed "to state to what extent [they] currently use soundboard technology … and whether they plan to use it in the future"; in other words, they had no plan to engage in conduct that the challenged law regulated *at all*.  39 F.4th 1200, 1210-11 (9th Cir. 2022).  This case could not be more different.  NSSF members indisputably intend to continue making, selling, and marketing their products—precisely what AB 1594 covers (if the AG deems it "unreasonable").[2]

Ripeness is satisfied for the same reasons.  In a pre-enforcement challenge, the constitutional ripeness inquiry is the same as the standing inquiry.  *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022).  As for prudential ripeness, the AG's argument fails straight off.  *Driehaus* highlighted the impropriety of dismissing a case on prudential grounds when, as here, the plaintiff alleges an Article III injury.  573 U.S. at 167.  Consistent with that aviso, the Ninth Circuit has not only "cast doubt on the prudential component of ripeness," *Clark v. City of Seattle*, 899 F.3d 802, 809 n.4 (9th Cir. 2018), but "declined to reach prudential ripeness when

---

[2] Demanding a confession of specific *violative* conduct would be especially inappropriate here given that NSSF is challenging AB 1594 on vagueness grounds. It would be nonsensical to require NSSF to identify exactly which conduct it fears the AG will dub "unreasonable" when part of the problem is that AB 1594 fails to identify what makes conduct "unreasonable."  Under the AG's view, a state that enacts a vague law gets not only to chill constitutionally protected activity, but to eliminate pre-enforcement review entirely.  That clearly is not the law.  *See Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1350 (11th Cir. 2011) (citing cases).

constitutional ripeness is satisfied," *State ex rel. Becerra v. Sessions*, 284 F.Supp.3d 1015, 1031 (N.D. Cal. 2018). "Prudential ripeness" simply has no role to play here.

In all events, this case is fit "for judicial decision," and NSSF members will suffer "hardship" from "with[eld] court consideration." *Tingley*, 47 F.4th at 1070. On the fitness prong, the AG does not deny that the issues are purely legal or that AB 1594 is final. Instead, he argues that more facts are needed to resolve NSSF's claims—but he is notably silent on what those additional facts are, likely because "further factual development … would do little to aid the court's decision" on NSSF's purely legal claims. *In re Coleman*, 560 F.3d 1000, 1009 (9th Cir. 2009). As for hardship, AB 1594 presents "the immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993). In fact, denying review would force NSSF members to choose to either refrain from constitutionally protected activity or risk proceedings *from which they are immune as a matter of law* under the PLCAA. *See Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009). That is an immediate hardship that warrants immediate review.

2. NSSF also has standing vis-à-vis §1021.11. Under that statute, the AG could seek fees from NSSF (and counsel) if, say, this Court ruled for NSSF on all but one of its challenges to AB 1594. The AG believes he "cannot enforce the provisions of §1021.11," AG.Br.6, and NSSF is glad to hear it. But no court order specifically protects NSSF (or counsel) from §1021.11 if the AG changes his mind. Given that the AG does not dispute that §1021.11 "violates constitutional rights" and "conflicts with [42 U.S.C.] §1988," PI.Br.25, he can have no valid objection to an injunction that merely extends the relief awarded in *Miller* to the parties here.

## II.   NSSF Is Likely To Succeed On The Merits Of Its Claims.

### A.   AB 1594 Violates the Second Amendment.

The AG misunderstands how Second Amendment challenges work. *Bruen* was a facial challenge to New York's public-carry licensing regime. *See N.Y. State*

*Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2122 (2022). Yet the Court did not ask whether requiring good cause to get a carry permit could pass muster in some potential applications. Instead, it concluded that "if a statute is inconsistent with the Second Amendment's text and historical understanding, then it falls under any circumstances." *United States v. Connelly*, 2023 WL 2806324, at *15 (W.D. Tex. Apr. 6, 2023). That AB 1594 may ban some arms that fall outside the Second Amendment's protection, *see* AG.Br.10, is thus irrelevant. The AG (correctly) does not dispute that "the Second Amendment protects" the conduct AB 1594 restricts, *Bruen*, 142 S.Ct. at 2134; *see* AG.Br.7-9, so the only question is whether AB 1594's sweeping restrictions are consistent with this nation's history of firearm regulation.

The answer is decidedly no. *Bruen* held that our nation's historical tradition precludes states from banning arms "in common use today" for lawful purposes; only arms that are *both* unusually dangerous *and* "highly unusual in society at large" may be banned. 142 S.Ct. at 2143. For a law that takes the radical step of banning classes of arms, that *is* the historical test. Yet AB 1594 adopts a far less protective test, banning all arms that the AG (or a state-court judge) deems "abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety in California," §3273.51(c), *even if they are in common use for lawful ends*.

The AG asserts (at 9) that "AB 1594 does not restrict the manufacture, sale, or possession of any" arm "in common use." Nonsense. Courts have recognized that AR-style rifles are "'in common use' for several lawful purposes, including self-defense." *E.g.*, *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 2023 WL 2655150, at *6 (D. Del. Mar. 27, 2023). While the AG may quibble with the "including self-defense" part, not even he can deny that such rifles—which long have been "widely accepted as lawful in this country, *Staples v. United States*, 511 U.S. 600, 612 (1994)—are commonly used for legitimate sport and recreational activities. Yet as the AG proudly notes, AB 1594 prohibits these rifles simply because (he says) they are "'most suitable for assaultive purposes

instead of lawful self-defense, hunting, or other legitimate sport and recreational activities.'"   AG.Br.10 (quoting §3273.51(c)(2)(A)).   Therein lies the problem. "[T]he relevant question" under *Bruen* and *Heller* "is 'what the people choose' for lawful purposes, *rather than a weapon's objective suitability for those purposes*." *Del. State Sportsmen's Ass'n.*, 2023 WL 2655150, at *6 (emphasis added); *see Dist. of Columbia v. Heller*, 554 U.S. 570, 629 (2008).   But under AB 1594, arms that the American people *overwhelmingly choose for lawful purposes* can be banned outright if the state deems them "most suitable for assaultive purposes."   When the Supreme Court articulates a standard for constitutional rights, states may not adopt one that is less protective—yet is what California has done in §3273.51(c)(2)(A).[3]

Furthermore, AB 1594 bans all arms that are "designed … in a manner that is targeted at minors."   §3273.51(c)(2)(C).   That includes "youth-model firearms," which are "smaller [in] size and lighter [in] weight" than standard models.   Cupero Decl. ¶15.   The AG does not deny that such models are common, or that they fall within this prohibition; he just retorts that "selling firearms to children is illegal." AG.Br.11.   But AB 1594 does not prohibit selling firearms to children.   It prohibits manufacturing firearms designed to be easier for children to use safely and selling them *to adults* who want to take their kids hunting or introduce them to the sport of target shooting.   No tradition in this country bans selling or manufacturing firearms that are safer for minors to use under adult supervision, or marketing them to adults.

AB 1594's provisions authorizing courts to make industry members pay to redress harms caused by criminals are likewise inconsistent with historical tradition.

---

[3] To the extent the AG suggests that NSSF's challenge to that provision is un-redressable here because NSSF has not challenged California's separate "assault weapons" ban, he is wrong.   While §3273.51(c)(2)(A) overlaps with that ban, which is currently being challenged in separate litigation, it is broader in terms of both liability and remedies.   To the extent the Court disagrees, NSSF respectfully requests leave to amend its complaint to add a Second Amendment challenge to that ban.

*See* PI.Br.11-12.  The AG accuses NSSF (at 11) of "mischaracteriz[ing]" the statute, but he has no answer for what the text actually says.  Under §3273.51(b)(2), firearm manufacturers must "ensure that" their products are not sold to any "downstream distributor or retailer … who fails to establish, implement, and enforce reasonable controls," i.e., "reasonable procedures … designed, implemented, and enforced to," *inter alia*, "[p]revent the loss or theft of a firearm-related product," §3273.50(g)(2). Under §3273.52(d), industry members found to have violated that provision may be ordered to pay, *inter alia*, "Damages."  And under §3273.52(f), "criminal misuse of a firearm[]" "by a third party" "shall not preclude a firearm industry member from liability under this section."  So, if a criminal breaks into a store, steals a gun, and uses it in a crime, the manufacturer can be held liable and ordered to pay damages to "remedy the harm," §3273.52(d)(2), (d)(4)—and the only damages will be those from the crime.  *See* AG.Br.24 (AB 1594 "applies only to firearm products … that cause harm in California").  No tradition supports such sweeping liability for the manufacturer of constitutionally protected products.  The AG certainly points to none—and "we are not obliged to sift the historical materials for evidence to sustain [a law].  That is [the government's] burden." *Bruen*, 142 S.Ct. at 2150.

The AG tries to evade his burden under *Bruen* by invoking dicta from *Heller*, which he says instructs that "'laws imposing conditions and qualifications on the commercial sale of arms' are 'presumptively lawful.'"  AG.Br.8.  Even if this dictum survives *Bruen*, it cannot save §3273.51(b).  Requiring a manufacturer to, e.g., "[t]ake reasonable precautions" to ensure that its distributors do not resell to retailers that fail to enforce "reasonable" anti-theft protections, *see* §3273.51(b)(1), (b)(2), *is not* a "condition[] … on the commercial sale of arms."  Conditions on sale happen at the point of sale, not three entities up the chain.  In all events, the universe of "laws imposing conditions … on the commercial sale of arms" contemplated by *Heller* is limited to laws that are "longstanding."  554 U.S. at 626-27 & n.26.  But attempts to apply to the manufacture of arms the sort of sprawling "reasonableness"

7

Reply in Supp. of Pls.' Mot. for Prelim. Inj. (3:23-cv-00945-AGS-KSC)

theories that AB 1594 revives are "without foundation in hundreds of years of the common law and jurisprudence of the United States."  15 U.S.C. §7901(a)(7).

**B.      AB 1594 Is Preempted.**

1. Under the PLCAA, civil actions against firearm industry members to redress harm from a third party's misuse of a firearm "may not be brought."  *Id.* §§7902(a), 7903(5)(A).  Yet, as explained, AB 1594 empowers the AG to do just that:  sue industry members to make them pay "damages" to redress harms caused by third parties who misuse their products.  Given that—not to mention the Ninth Circuit's square holding that the predicate exception does not save actions under statutes that merely codify the same sort of common-law theories that the PLCAA was enacted to stamp out, *see Ileto*, 565 F.3d at 1136-38—it is perhaps unsurprising that the AG concedes that the "PLCAA may preempt certain applications of AB 1594."  AG.Br.14.  More surprising is that he thinks this means NSSF loses.  That strange argument is premised on a basic misunderstanding of NSSF's claim.

*Contra* AG.Br.13, NSSF's preemption claim does not ask this Court to enjoin enforcement of AB 1594 "in its entirety."  All NSSF is asking this Court to do here is enjoin the AG *from bringing actions under AB 1594 that conflict with the PLCAA against NSSF and its members*.  To be sure, that claim is "facial" in the sense that the conflict with the PLCAA is apparent in the text of AB 1594—i.e., "on its face."  But a claim that is "facial" in *that* sense does not require invalidating a law in its entirety.  "[T]he distinction between [facial and as-applied] challenges mainly goes to the breadth of the remedy."  *United States v. Idaho*, 623 F.Supp.3d 1096, 1108 (D. Idaho 2022).  And, on its preemption claim, the remedy NSSF seeks is far more modest than the AG suggests.  NSSF maintains that AB 1594 is preempted to the extent it authorizes suits against parties protected by the PLCAA (federally licensed manufacturers and sellers) that are not predicated on a knowing violation of some statute *other than AB 1594* that was a proximate cause of the injuries for which redress is sought.  To the extent AB 1594 sweeps beyond that—such as by

authorizing suits against entities that are not federally licensed, *see* AG.Br.14 n.10, or predicated on some other PLCAA exception—the AG can ask this Court to exclude such applications from any injunction it may grant.  But the AG cannot preclude NSSF from obtaining any relief at all by pointing to potentially valid applications of AB 1594 that are outside the scope of NSSF's preemption challenge.

The question, then, is whether AB 1594 authorizes the AG to bring actions not saved by the predicate exception.  The answer is yes, as the AG all but concedes.

*Ileto* lights the way.  Plaintiffs there sought to hold licensed manufacturers and sellers liable under a state nuisance statute for "foreseeably and proximately causing injury" wrought by criminals who misused firearms, simply by virtue of having made, sold, and marketed their products in large numbers. 565 F.3d at 1130. But that is "exactly" the sort of sweeping tort claim the PLCAA was designed to (and did) "eliminate"—and the fact that California "codified" it "in its civil code" made no difference.  *Id.* at 1137-38.  So too here.  To be sure, the statute in *Ileto* did not specifically regulate the firearms industry.  But the idea that the PLCAA is *more* receptive to laws that subject *only* firearm industry members to the same suits Congress declared "an abuse of the legal system," 15 U.S.C. §7901(a)(6), is nonsensical.  The point of the PLCAA is to protect firearm industry members, *and them alone*, from suits "based on theories without foundation in hundreds of years of the common law."  15 U.S.C. §7901(a)(7).  Indeed, *Ileto* went out of its way to *reject* the argument that the statute was insufficiently "applicable" to the firearms industry, instead concluding that "an examination of the text and purpose of the PLCAA shows that Congress intended to preempt *general tort theories of liability*," regardless of whether they are advanced through common-law or statutory causes of action.  565 F.3d at 1136 (emphasis added).  Just like in *Ileto*, then, suits under AB 1594—which likewise simply codifies, and in some cases expands, nebulous tort-law theories—do not satisfy the predicate exception as a matter of course.

Making matters worse, if an industry member is deemed under AB 1594 to

have failed to "enforce reasonable controls" or "take reasonable precautions," or if it manufactures, sells, or markets products that a state court later deems "abnormally dangerous," then it violates state law even if it did not *know* that its conduct was "unreasonable" or that its products were "abnormally dangerous." Yet the predicate exception "[b]y its terms … only exempts civil actions that require proof that the defendant knowingly violated the relevant statute." *NSSF v. Platkin*, 2023 WL 1380388, at *6 (D.N.J. Jan. 31, 2023); *see* 15 U.S.C. §7903(5)(A)(iii). AB 1594 thus directly conflicts with—i.e., "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of"—the PLCAA. *Platkin*, 2023 WL 1380388, at *4 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)).

AB 1594's lack of a knowledge requirement was not some drafting error; nor is it something that can be pleaded around, *contra* Scholars.Br.16-19. AB 1594's *raison d'être* is reinstating the sort of liability that the PLCAA took off the table. It should be no surprise, then, that unlike the examples in the predicate exception— prohibitions against aiding and abetting straw purchases and entering false information in required records, *see* PI.Br.13—AB 1594's open-ended commands to "enforce reasonable controls" and "[t]ake reasonable precautions" do not lend themselves to knowing violations. Under AB 1594, a manufacturer "who complies with all laws but did not know that it failed to employ 'reasonable procedures'" can be liable. That is "contrary to the PLCAA." *Platkin*, 2023 WL 1380388, at *7.

And it is not the only conflict with the PLCAA. To come within the predicate exception, an action must allege proximate cause. That makes sense, as the whole point of the PLCAA is to immunize industry members from harms caused by "the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. §7901(b)(1). That objective would be defeated if states could simply redefine proximate cause to exclude consideration of whether harms were caused by the criminal or unlawful acts of third parties. Yet AB 1594 purports to do exactly that. *See* §3273.52(f).

2. Unable to deny that AB 1594 conflicts with the PLCAA, the AG contends that this Court is powerless to entertain NSSF's preemption claim.  That is doubly wrong:  Both *Ex parte Young* and 42 U.S.C. §1983 supply the necessary authority.

Federal courts have inherent equitable power to "enjoin enforcement of state statutes that violate the Constitution or conflict with other federal laws."  *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018).  While Congress *can* foreclose such relief, only "statutes with a detailed remedial scheme" can "displace[]" the "remedy available under *Ex parte Young*."  *Id.*  The PLCAA has no such detailed scheme.  Indeed, it does not provide a remedy at all; it provides only a prohibition:  "A qualified civil liability action may not be brought in any Federal or State court."  15 U.S.C. §7902(a).  Nothing in the PLCAA even hints that this may be enforced only defensively.  And unlike the purely political remedy in *Armstrong*, nothing about that command is "judicially unadministrable."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015).  Courts enforce it all the time in the defensive context, and they are every bit as capable of doing so in the offensive context.

As for §1983, that law creates a right of action to enforce against state actors "immunities secured by the Constitution and laws" of the United States.  42 U.S.C. §1983.  Section 1983's "unqualified reference to 'laws'" sweeps in *all* federal laws.  *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 143 S.Ct. 1444, 1450 (2023).  That makes this an easy case:  As explained—and as the AG notably does not deny, *see* AG.Br.12 n.9, 24-25—the PLCAA grants licensed firearm industry members a federal immunity against the suits it bars.  *Ileto*, 565 F.3d at 1142; *accord In re Acad., Ltd.*, 625 S.W.3d 19, 33-34 (Tex. 2021) (so holding).  Section 1983 thus provides industry members with a cause of action to vindicate that right.

## C.    AB 1594 Violates the First Amendment.

1. Laws like AB 1594 that "impose[] a burden based on the content of speech and the identity of the speaker" demand "heightened scrutiny"—and "[c]ommercial speech is no exception."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566-67 (2011).

Yet rather than argue that AB 1594 can survive such scrutiny, the AG again begins with his "facial challenge" mantra, insisting that this Court cannot enjoin AB 1594's marketing provisions unless NSSF shows that they have zero valid applications. AG.Br.20.  That confuses the remedial question with the merits question.  NSSF is *not* asserting an "overbreadth" challenge—a claim that, while AB 1594's speech restrictions are constitutional as to the speech of NSSF and its members, it still must be invalidated in toto because it is unconstitutional as to the speech of third parties not before the court.  NSSF's claim is that AB 1594 is unconstitutional *as to NSSF and its members* because it subjects *them* to liability for *lawful* speech promoting lawful products.  Whether AB 1594 may permissibly be applied to others' *unlawful* speech (e.g., "speech that is misleading or concerns unlawful conduct," AG.Br.20) is therefore entirely irrelevant to resolving NSSF's claim.  To the extent AB 1594 may have valid applications, the Court can tailor its injunction to exclude them.

The AG is thus left arguing that AB 1594 satisfies the *Central Hudson* test. It does not.  The AG does not deny that AB 1594 restricts commercial speech that is not false, deceptive, or misleading; he just ignores that fatal flaw.  But even under *Central Hudson*, a court cannot perform the reasonable-fit analysis by looking only to a small subset of a law's applications.  "[A] restriction on commercial speech 'must not be more extensive than is necessary to serve' a substantial government interest—i.e., it should not be *overinclusive*." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 825 (9th Cir. 2013); *see Tracy Rifle & Pistol LLC v. Harris*, 339 F.Supp.3d 1007, 1018 (E.D. Cal. 2018).  The AG does not even try to carry his burden on that question, likely because a law that tells private parties not to speak "unreasonably" is the definition of an overinclusive restriction on speech.

2. AB 1594's prohibitions on "unreasonable" marketing are also hopelessly vague.  As NSSF has shown, *see* PI.Br.17-18, *any* ad for a lawful product may be grounds for liability under AB 1594's amorphous standards—forcing members to refrain from exercising First Amendment rights.  The AG offers no response to this

1   reality.  Instead, he complains that NSSF has not said exactly what ads its members
2   plan to pull.  That is not how this works.  Plaintiffs have no idea what sort of *lawful*
3   marketing the AG will deem unreasonable—which is the whole problem.  And
4   while the AG apparently would prefer to sweep this issue under the rug, NSSF
5   members have no such luxury, as suits recently filed under a similar law—which
6   fault them for, e.g., marketing based on traits as common as "ease of concealment"
7   or "capacity," *see* Compl. ¶¶1, 32, *City of Buffalo v. Smith & Wesson Brands, Inc.*,
8   No. 1:23-cv-00066 (W.D.N.Y. Jan. 23, 2023), Dkt.1-1—make all too clear.

9        **D.   AB 1594 Is Void for Vagueness.**

10        AB 1594 is also unconstitutionally vague as to all other conduct it polices.
11   Remarkably, the AG defends AB 1594 only under the "less strict vagueness test"
12   that applies to laws that do not implicate constitutional rights.  AG.Br.22.  But while
13   economic regulations may typically be "subject to a relaxed vagueness test, … laws
14   that might infringe constitutional rights [are subject] to the strictest of all."  *VIP of*
15   *Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010).  Accordingly, "the
16   most important factor affecting the clarity that the Constitution demands of a law is
17   whether it threatens to inhibit the exercise of constitutionally protected rights."  *Vill.*
18   *of Hoffman Ests. v. Flipside, Hoffman Ests., Inc*., 455 U.S. 489, 499 (1982).
19   Whatever room for debate there may be about whether AB 1594 actually *violates*
20   the First or Second Amendment, no one can deny that it *implicates* those rights.
21   Indeed, AB 1594 threats to "impos[e] liability on an entire industry" that enables
22   the exercise "of a basic constitutional right" (the right to keep and bear arms).  15
23   U.S.C §7901(a)(6).  The most "stringent vagueness test" known to law thus applies
24   even setting aside the statute's speech restrictions.  *Hoffman Ests.*, 455 U.S. at 499.

25        AB 1594 plainly flunks that stringent test, for the reasons explained in
26   NSSF's opening brief (at 18-19).  And *contra* Brady.Amicus.7-13, the mere fact
27   that some reckless conduct is obviously irresponsible does not somehow mean that
28   a law that sweeps well beyond such easy cases is safe against vagueness challenges.

Indeed, the very fact that the AG *does not even respond to NSSF's arguments* underscores the unconstitutional breadth of the discretion AB 1594 grants him.

### E.     AB 1594 Unconstitutionally Regulates Out-of-State Conduct.

The AG badly misreads *National Pork Producers Council v. Ross*, 143 S.Ct. 1142 (2023). *Ross* was an extraterritorial *effects* case, not a direct regulation case. The only conduct that could violate the law there (Prop 12) is "the *in-state* sale of whole pork meat that comes from breeding pigs … 'confined in a cruel manner.'" *Id.* at 1150 (emphasis added). Prop 12 does not impose liability on out-of-state farms if their pig pens are too small; in fact, it does not *directly* regulate out of state *at all*. That is why the claim in *Ross* was that the law's "practical effect" on out-of-state operations was too great. *Id.* at 1154-56. Here, by contrast, AB 1594 *does* directly regulate out-of-state commerce, imposing liability on out-of-state actors for non-compliant transactions completed and acts undertaken wholly out of state (and in full compliance with both federal and state law where the transaction takes place).

For example, AB 1594 requires manufacturers to "implement" "reasonable procedures … that are designed" to "[p]revent the loss or theft of [their] product[s] from [their facilities]." §§3273.50(g)(2), .51(b)(1). For those like Smith & Wesson and Ruger, which "do[] not have any manufacturing operations in California," Reid Decl. ¶7; Cupero Decl. ¶7, *only* out-of-state conduct could "fail to comply with [that] requirement." §3273.51(a). The requirement to take "reasonable precautions to … not sell … a firearm-related product to a downstream distributor or retailer … who fails to establish … reasonable controls," §3273.51(b)(2), is worse. AB 1594 does not define "reasonable precautions," but it appears at least to require inserting new terms in sales contracts with distributors—transactions that take place out of state. Furthermore, AB 1594 authorizes "[i]njunctive relief sufficient to prevent the firearm industry member … from further violating the law," §3273.52(d)(1), which will mean California courts using California law *to enjoin* out-of-state practices for out-of-state companies (which most firearm manufacturers are). *See* PI.Br.21.

AB 1594 thus *directly* regulates out-of-state conduct, and is unconstitutional to that extent. *Ross* made clear that state laws that "*directly* regulate[] out-of-state [commerce]" are no less unconstitutional now than last year. 143 S.Ct. at 1157 n.1. Binding precedents such as *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1321-24 (9th Cir. 2015) (en banc), and *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615-16 (9th Cir. 2018), remain alive and well—and doom AB 1594.[4]

## III. The Remaining Factors All Favor Injunctive Relief.

NSSF is likely to succeed on its claims; that is enough for irreparable injury. *See* PI.Br.24-25. NSSF members also stand to suffer irreparable economic loss. The AG has no response to the argument that "AB 1594 will cause 'the constriction of [the] market' for lawful firearms and related products—a textbook economic 'injury.'" PI.Br.25 (quoting *Craig v. Boren*, 429 U.S. 190, 194 (1976)). And his claim that loss of PLCAA immunity does not support facial relief, AG.Br.24-25, misses the point; forcing members to litigate AB 1594 claims, even just to "summary judgment," AG.Br.25, would defeat the whole point of the immunity the PLCAA confers. Finally, the AG has nothing to say about the wall of precedent holding that the public interest always favors enjoining laws that flout constitutional rights; nor does he deny that enjoining an invalid law causes a state no harm as a matter of law. *See* PI.Br.25. That suffices to tip the final factors in NSSF's favor.

## CONCLUSION

The Court should enjoin the AG from enforcing AB 1594 against NSSF and its members and from enforcing §1021.11 against NSSF, its members, and counsel.

---

[4] To be sure, AB 1594 does not apply unless a company's "products [are] sold, distributed, or foreseeably possessed in California." AG.Br.24. But the reasonable controls and precautions provisions do not regulate products; they regulate conduct. And under binding precedent, not even the fact that a company's products "cause[s] harm in California" (AG.Br.24) gives the state authority to regulate the company's out-of-state conduct. *See Daniels Sharpsmart*, 889 F.3d at 615-16.

Respectfully submitted,

s/Matthew D. Rowen
PAUL D. CLEMENT*
ERIN E. MURPHY*
MATTHEW D. ROWEN (Cal. Bar #292292)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
matthew.rowen@clementmurphy.com

* admitted *pro hac vice*

Attorneys for Plaintiff

August 4, 2023