# Clement & Murphy
### PLLC

August 29, 2023

**Via CM/ECF**

The Chambers of the Hon. Andrew G. Schopler
United States District Court for the Southern District of California
Edward J. Schwartz United States Courthouse
221 West Broadway
Suite 5160
San Diego, CA 92101

      Re:    *National Shooting Sports Foundation v. Bonta*, No. 3:23-cv-00945

To the Chambers of the Hon. Andrew G. Schopler:

      Plaintiff National Shooting Sports Foundation submits the following response to the Attorney General's notice of supplemental authority regarding the Third Circuit's recent decision in *NSSF v. Attorney General of New Jersey*, No. 23-1214 (3d Cir. 2023).

      At the outset, the Attorney General radically overstates the degree of similarity between the law at issue in the *New Jersey* case and the law at issue here. California Assembly Bill 1594 ("AB 1594") does not just extend state-law public nuisance liability to members of the firearm industry or authorize courts to hold them liable for "unreasonable"-but-not-"unlawful" conduct. *See* N.J. Stat. Ann. §2C:58-35(a). It explicitly prohibits the "manufacture, market[ing]," and "sale" of certain firearms and "[]related product[s]." Cal. Civ. Code §3273.51(c). Nothing in New Jersey's statute is remotely similar, let alone "nearly identical," to that prohibition. *Contra* Dkt.34 (Notice of Supp. Auth.) at 1. That makes the standing analysis considerably more straightforward here, as it is black-letter law (not to mention basic common sense) that manufacturers and sellers have standing to challenge laws that purport to ban the products they make and sell.

      The Attorney General cannot dispute that legal point, so he has tried to change the subject. But he cannot avoid having to defend the statute by hiding in shadows. AB 1594 makes it unlawful to manufacture, market, or sell any firearm that (in the state's view) has "features" that "render [it] most suitable for assaultive purposes instead of lawful self-defense, hunting, or other legitimate sport and recreational activities." Cal. Civ. Code §3273.51(c)(2)(A). While NSSF and its members dispute that any of their products are "most suitable for assaultive purposes," California obviously disagrees; after all, the state's ban on so-called "assault weapons" prohibits numerous NSSF members' firearms *by name*. *See* Cal. Penal Code §§30510, 30515. That is enough all by itself to satisfy Article III here, given the Attorney General's admission that what California deems "assault weapons" also "qualify" as "abnormally dangerous" under AB 1594. Dkt.23 (AG PI Opp'n) at 10.

And that is far from the only basis for standing. For one thing, §3273.51(c)(2)(A) does not appear to be limited to what is already prohibited under the "assault weapon" ban. One of NSSF's chief complaints about this provision is that it is unclear what it prohibits. Yet rather than provide assurance that, say, he has no plans to enforce this provision unless a member's product runs afoul of Penal Code §§30510 or 30515, all the Attorney General has said is that §3273.51(c)(2)(A) sweeps up "[f]irearms *such as* machineguns and assault weapons." Dkt.23 (AG PI Opp'n) at 10 (emphasis added). That suggests that additional firearms (and other "firearm-related products") are now unlawful as a result of AB 1594.

Nor is AB 1594 limited to firearms that California deems ill-suited for self-defense. It also prohibits the manufacture, sale, and marketing of any firearm that is "designed, sold, or marketed in a manner that is targeted at minors." Cal. Civ. Code §3273.51(c)(2)(C). And as NSSF has pointed out, this provision appears to outlaw the manufacture and sale of the "youth-model firearms" its members make, "which are obviously '*designed* … in a manner that is targeted at minors,'" even if they are not specifically *marketed* to minors. Dkt.14-2 (Cupero Decl.) ¶15 (emphases added); *see* Dkt.29 (NSSF PI Reply) at 1.

Given that NSSF members make, market, and sell products that AB 1594 appears to outlaw, the only way NSSF would *lack* standing would be if the Attorney General disavowed any intention of enforcing AB 1594 against NSSF members for manufacturing, marketing, or selling their firearms and related products. Yet rather than offer such assurances, the Attorney General has grandstanded. Literally all he has said is that "NSSF does not identify a single firearm it believes is in common use for self-defense today that AB 1594 prohibits." Dkt.23 (AG PI Opp'n) at 9. That is a merits argument, not a standing argument. The Article III question for a pre-enforcement challenge is simply whether a plaintiff (or its members) has a concrete plan to engage in conduct that "more than … hypothetical[ly]" could be said to violate the challenged law. *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)). Here, the answer to that question is plainly yes.

Once again, that readily distinguishes this case from the *New Jersey* case. The Third Circuit went out of its way there to underscore that "what the enforcer has said about enforcement plans" is critical to whether a plaintiff (or its members) faces imminent injury from enforcement of a new statute. Op.11. And on that score, these cases are at opposite ends of the spectrum. Counsel for New Jersey explicitly "disavowed" any intention of enforcing Assembly Bill 1765 ("A1765") against NSSF "members just for participating in 'lawful commerce.'" Op.11. That was critical, because A1765 creates liability for "conduct *either* unlawful in itself *or* unreasonable under all the circumstances," N.J. Stat. Ann. §2C:58-35(a)(1) (emphases added), and NSSF obviously did not claim that any of its members were acting unlawfully. In that context, the fact that the law enforcer said on the record that it has no plans to enforce the challenged law in the way that NSSF and its members feared (i.e., for conduct that complied with all extant laws, but that the state nonetheless viewed as "unreasonable," *see id.*) materially altered the Article III analysis.

Here, by contrast, the Attorney General has never disavowed any intention to use AB 1594 to sue NSSF members for the otherwise-lawful manufacturing, marketing, and

distributing of firearms.  And under Ninth Circuit precedent, the very fact "[t]hat the [Attorney General] has not disavowed enforcement" in the manner NSSF and its members fear (i.e., for manufacturing or selling firearms that are not already prohibited under the extant "assault weapons" ban, or other conduct that is entirely compliant with all extant law) "is evidence of an intent to enforce it."  *Arizona*, 34 F.4th at 850; *accord, e.g.*, *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[T]he Government's failure to disavow application of the challenged provision [is] a factor in favor of a finding of standing.").  Common sense points to the same conclusion.  The idea that every major firearm manufacturer in the country lacks standing to challenge this sweeping prohibition just because the Attorney General will not tell them exactly how far it sweeps "sounds absurd, because it is." *Sekhar v. United States*, 570 U.S. 729, 738 (2013).

Finally, unlike in the *New Jersey* case, where only the Attorney General could enforce the challenged statute, private parties can sue NSSF members under AB 1594.  *See* Cal. Civ. Code §3273.52(b).  That matters:  As the Third Circuit explained, "the risk of enforcement is greater when private parties can enforce the law."  Op.11; *see also Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1173 (9th Cir. 2018) (rejecting argument that plaintiff lacked standing where "even if the Attorney General would not enforce the law" at issue, private citizens had a right of action to sue for damages).

In short, the Third Circuit's decision confirms that NSSF has standing to sue here.

Respectfully submitted,

s/ Matthew D. Rowen
PAUL D. CLEMENT*
ERIN E. MURPHY*
MATTHEW D. ROWEN (Cal. Bar # 292292)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
matthew.rowen@clementmurphy.com

* admitted *pro hac vice*

Counsel for Plaintiff