ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
CHRISTINA R.B. LÓPEZ
S. CLINTON WOODS
Deputy Attorneys General
State Bar No. 246054
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3807
 Fax:  (415) 703-5480
 E-mail:  Clint.Woods@doj.ca.gov
*Attorneys for Defendant Attorney General
Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NATIONAL SHOOTING SPORTS FOUNDATION,**<br><br>Plaintiff,<br><br>v.<br><br>**ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA,**<br><br>Defendant. | 3:23-cv-00945-AGS-KSC<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:  October 4, 2023<br>Time:  2:00 p.m.<br>Courtroom: 5C<br>Judge:  Hon. Andrew G. Schopler<br>Action Filed:  5/23/2023 |

# INTRODUCTION

Plaintiff National Shooting Sports Foundation (NSSF) has not established a likelihood of success on its pre-enforcement facial challenge to Assembly Bill 1594, a California law designed to promote responsible practices in the firearm industry. NSSF's motion for a preliminary injunction fails at the threshold because NSSF lacks standing to bring any of its claims, and those claims are not ripe. Nor could NSSF succeed on the merits because AB 1594 has numerous lawful applications, and—as discussed in Defendant's opposition brief and at the hearing—NSSF's various constitutional claims are unavailing.

After the hearing on NSSF's motion, the Court asked for additional briefing on three topics:

1. Whether the *Salerno* no-set-of-circumstances standard governs plaintiff's pre-enforcement facial challenges to AB 1594 under any or all of plaintiff's theories, including the Second, First, and Fourteenth Amendments, the dormant Commerce Clause, and preemption.

2. Whether the Protection of Lawful Commerce in Arms Act [PLCAA] can be used offensively in a pre-enforcement facial challenge to preempt a state or federal statute.

3. If a preliminary injunction were granted, the appropriate scope of such injunction, considering each ground for relief in isolation.

*See* Dkt. 37.

Defendant addresses each of these questions below.

# ARGUMENT

## I. NSSF CANNOT SATISFY THE *SALERNO* STANDARD AS TO ANY CLAIM

To obtain relief on any of its facial challenges to AB 1594, NSSF must meet the "no set of circumstances" test set forth in *United States v. Salerno*, 481 U.S. 739, 745 (1987) (alteration omitted). NSSF seeks to "enjoin enforcement" of the statute in its entirety, not just as applied in a specific factual context. Mem. 3. A facial challenge of that sort is "the most difficult challenge to mount successfully,

1

since the challenger must establish that no set of circumstances exists under which the statute would be valid." *Salerno*, 481 U.S. at 745; *accord, e.g.*, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008).

Ninth Circuit precedent clearly establishes that NSSF must satisfy the *Salerno* test to bring a successful preemption, due process, or dormant Commerce Clause claim. *See Sprint Telephony, L.P. v. Cty. of San Diego,* 543 F.3d 571, 579 n.3 (9th Cir. 2008) (*Salerno* test applies to "a federal preemption facial challenge to a state statute"); *William Jefferson & Co., Inc. v. Bd. of Assessment and Appeals ex. rel. Orange Cty.,* 795 F. 3d. 960, 963 (9th Cir. 2012) (applying *Salerno* to due process challenge); *Rosenblatt v. City of Santa Monica*, 940 F. 3d 439, 445 (9th Cir. 2019) (applying *Salerno* to facial challenge under dormant Commerce Clause). Because there are constitutional applications of AB 1594 in the preemption,[1] due process, and dormant Commerce Clause contexts, those claims must fail.

Similarly, in the First Amendment context, a plaintiff must meet the *Salerno* test, or alternatively, demonstrate that a substantial number of the law's applications are unconstitutional judged in relation to the statute's plainly legitimate sweep. *United States v. Stevens*, 599 U.S. 460, 473 (2010) (citing *Wash. State Grange,* 552 U.S. at 449 n.6). Here, numerous applications of AB 1594's marketing and advertising provisions are constitutional, including its prohibitions against advertising illegal or dangerous weapons such as ghost gun parts kits or machineguns. *See* Opp. 21-22. Accordingly, NSSF's facial First Amendment challenge to AB 1594 fails.

As to NSSF's Second Amendment claim, courts in this Circuit have routinely applied the *Salerno* test in adjudicating post-*Bruen* challenges to firearm regulations. *See, e.g.*, *Doe v. Bonta*, ___ F. Supp. 3d ___, 2023 WL 187574, at *2-

---

[1] In the preemption context, NSSF has conceded that there are constitutional applications of a similar statute. *See NSSF v. Att'y Gen. of N.J.*, 3d Cir. No. 23-1214, June 7, 2023 Oral Argument at 31:29-32:09, 32:20-39, available at https://tinyurl.com/yrehvrcu (accessed Sept. 21, 2023).

6 (S.D. Cal. Jan. 12, 2023) (applying *Salerno* to uphold firearm information disclosure law); *United States v. Perez-Garcia*, 628 F. Supp. 3d 1046, 1051 (S.D. Cal. 2022) (Second Amendment challenge failed because defendant failed to show that there were no circumstances where imposition of pretrial restriction on possession of firearms would be valid); *Cal. Rifle & Pistol Ass'n v. City of Glendale*, ___ F. Supp. 3d ___, 2022 WL 18142541, at *6–7 (C.D. Cal. Dec. 5, 2022) (concluding, under *Salerno*, that city could prohibit firearms "on at least some city property," and thus the ordinance was not "unconstitutional in all its applications"). Other district courts around the country have applied the *Salerno* test similarly. *See, e.g.*, *Nat'l Ass'n for Gun Rights v. Lamont*, ___ F. Supp. 3d ___, 2023 WL 4975979, at *6-7 (D. Conn. 2023) (applying *Salerno* to deny preliminary injunction in challenge to ban on large capacity magazines and assault weapons); *United States v. Ames*, 2023 WL 5538073, at * 3 (E.D. Pa. Aug. 28, 2023) (applying *Salerno* to reject facial challenge to felon-in-possession statute); *United States v. Lane*, 2023 WL 5663084, at *2-3 (E.D. Va. Aug. 31, 2023) (applying *Salerno* to reject facial challenge to felon-in-possession and machinegun statutes). Plaintiff has not cited any controlling authority to the contrary.

Nevertheless, NSSF asserts that, in light of the recent decisions in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), and *Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023), petn. for reh'g and reh'g en banc filed (Sept. 20, 2023), *Salerno* does not apply here. In NSSF's view, because AB 1594 is allegedly "less protective" of constitutional rights in certain circumstances than the Second Amendment standard "adopt[ed]" by the Supreme Court and the Ninth Circuit, AB 1594 is unconstitutional on its face. PI Hearing Transcript (Tr.) 29. But neither the *Bruen* nor the *Teter* opinion endorses that approach to facial Second Amendment challenges—indeed, neither case discusses or even cites *Salerno* at all. And it would be very unusual for Second Amendment claims alone to be exempt from the *Salerno* standard, which presumptively applies to *all* "facial challenge[s]" to

3

statutes, *Wash. State Grange*, 552 U.S. at 449. The right to keep and bear arms under the Second Amendment is "not a second class right," *Bruen*, 142 S. Ct. at 2156 (internal quotation marks omitted), but neither is it exempt from the basic legal rules governing claims under other provisions of the Bill of Rights.[2]

As NSSF has acknowledged, Tr. 43, the "proper cause" requirement struck down in *Bruen* operated uniformly—and unconstitutionally—in *all* circumstances. 142 S. Ct. 2122-23. That likely explains why New York did not raise a *Salerno* argument in defense of its law.[3] And in light of the Supreme Court's reasoning in *Bruen*, there is *no* circumstance in which a person may constitutionally be denied a permit to carry a handgun due to a lack of "proper cause," making facial relief appropriate. *Id.* at 2123-24, 2156. Similarly, *Teter* struck down a blanket ban on the possession of all butterfly knives in Hawaii. 76 F.4th at 942.

NSSF appears to argue that the application of *Salerno* would have necessarily resulted in a different outcome in *Bruen*, because some individuals could constitutionally have been denied a permit under a "may issue" scheme. Tr. 52; *see* Reply 4-5. Not so. It is true that some individuals denied a permit under a "may issue" scheme could very likely have been denied a permit on *other* grounds—for

---

[2] Some federal courts outside the Ninth Circuit have expressed doubt about whether the *Salerno* standard continues to govern facial Second Amendment challenges, noting that "*Bruen* places the burden on the government to establish that a firearm regulation has its roots in American history and tradition." *United States v. Alston*, 2023 WL 4758734, at *4 n.4 (E.D.N.C. July 18, 2023); *see also United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023). But there is no conflict between *Salerno*'s "no set of circumstances" test and *Bruen*'s framework. If a plaintiff establishes that the "Second Amendment's plain text covers" a particular application of a law, "the government must demonstrate" that that application "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. But where a statute has many different potential applications and a plaintiff asserts a facial challenge seeking to enjoin *all* of them, facial relief is appropriate only if *none* of the statute's applications are consistent with traditional firearm regulation. *See, e.g.*, *United States v. Barber*, 2023 WL 1073667, at *4 (E.D. Tex. Jan. 27, 2023).

[3] *See* Brief for Respondents, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843 (U.S.), 2021 WL 4245013 (Sept. 14, 2021).

4

1  instance, because they are felons or mentally ill, *see Bruen*, 142 S. Ct. at 2162
2  (Kavanaugh, J., concurring).  But that would not be a basis for upholding New
3  York's "may issue" scheme under *Salerno*—just as, for example, the fact that
4  certain law enforcement searches could have been justified based on consent or
5  exigent circumstances did not defeat the plaintiff's facial Fourth Amendment
6  challenge to a municipal ordinance authorizing searches more broadly on other
7  grounds in *City of Los Angeles v. Patel*, 576 U.S. 409, 418-19 (2015).  As the Court
8  explained in *Patel*, "the constitutional 'applications' that petitioner claims prevent
9  facial relief here are irrelevant to our analysis because they do not involve actual
10 applications of the statute." *Id.* at 419.

11     That is not the case with AB 1594, which has numerous *actual applications*
12 that are plainly constitutional, precluding facial invalidation of the statute under
13 *Salerno*.  For example, AB 1594 imposes civil liability for the marketing and sale
14 of illegal products such as machineguns, as well as for the marketing and sale of
15 firearms to straw purchasers or individuals prohibited from possessing firearms.
16 Cal. Civil Code §§ 3273.51(c)(2)(A) & (C), 3273.52(a).  The Supreme Court has
17 made clear that such regulations are permissible, *District of Columbia v. Heller*,
18 554 U.S. 570, 627 (2008); *see Bruen*, 142 S. Ct. at 2143, and thus, there is no basis
19 to disregard *Salerno* and "craft[] [an] injunction," Tr. 52-53, to "slice[] off," *id.* at
20 43, such lawful applications of the statute.  Like its other claims, NSSF's Second
21 Amendment claim fails under *Salerno*.

22 **II.   NSSF LACKS A CAUSE OF ACTION FOR ITS PREEMPTION CLAIM**

23     In addition to the lack of standing or ripeness, and NSSF's failure to satisfy
24 *Salerno* (which applies to its facial PLCAA challenge, *see supra* at 3), the PLCAA
25 claim fails for a third threshold reason:  NSSF has no private right to sue under
26 Section 1983 or any other mechanism.  Opp. 12-13.  PLCAA contains no express
27 cause of action.  And none can be implied because there is no "'rights-creating'
28 language" of the sort necessary for an implied cause of action. *Alexander v.*

5

*Sandoval*, 532 U.S. 275, 288 (2001). Indeed, PLCAA states explicitly that "no provision … shall be construed to create a public or private cause of action or remedy." 15 U.S.C. § 7903(5)(C). PLCAA's text and structure confirm that it confers a defense to specific types of "actions" that have been "brought," 15 U.S.C. § 7902(a)—not an unambiguous right to affirmatively challenge state statutes. *Woods v. Steadman's Hardware, Inc.*, 2013 WL 709110, at *3 (D. Mont. Feb. 26, 2013) ("The PLCAA explicitly prevents its own use as a jurisdictional hook."). As NSSF has conceded, no court has upheld reliance on PLCAA in an offensive manner because "[w]hat [PLCAA] says . . . is that a qualified civil liability action may not be brought in any federal or state court." Tr. 66 (citing Section 7902). NSSF's argument thus relies exclusively on cases in which PLCAA was raised as a defense to an *action*, not as an affirmative challenge to a *statute*. *See In re Academy*, 625 S.W.3d 19, 24 (Tex. 2021); *Ileto v. Glock*, 565 F.3d 1126, 1130-31 (9th Cir. 2009); *City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 389 (2d Cir. 2008).

Facing this jurisdictional bar, NSSF argues that Section 1983 supplies a cause of action here. Reply 11. But NSSF misconstrues the doctrine in multiple respects. First, a plaintiff filing suit under Section 1983 "must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). In understanding the right asserted, specificity matters: courts must first "determine exactly what rights, considered in their most concrete, specific form, [plaintiffs] are asserting." *Id.* at 346. Second, in assessing whether any such right is "enforceable under § 1983," clarity matters: the plaintiff must show that Congress created a right "in clear and unambiguous terms," *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002), not merely that the plaintiff "falls within the general zone of interest that the statute is intended to protect," *id.* at 283.

NSSF cannot satisfy that burden here. Nothing in PLCAA's text or structure suggest that Congress intended for it to create a right for a private party like NSSF to challenge a statute as preempted. On the contrary, as discussed above, PLCAA

6

describes certain "action[s]" that may not be brought in court. 15 U.S.C. § 7902(a). It then delineates six exceptions that also turn on the nature of the "action." *Id.* § 7903(5)(A). PLCAA thus requires a court to review a specific suit to see whether it qualifies as any of six different kinds of "action." Take the predicate exception: it asks whether an "action" is one against a defendant who "knowingly violated" a state statute (and not what mens rea the underlying state law itself provides) and whether the pleaded "violation" is "a proximate cause" of the harm (again, not what causation element the underlying state law provides). *Id.* § 7903(5)(A)(iii). These provisions are "framed only as a legal defense" to certain lawsuits, not "a new federal cause of action" that can be asserted through Section 1983. *Ass'n of N.J. Rifle & Pistol Clubs v. Port Auth. of N.Y. & N.J.*, 730 F.3d 252, 262 (3d Cir. 2013) (Jordan, J., concurring).

NSSF suggests, alternatively, that *Ex parte Young*, 209 U.S. 123 (1908), supplies a cause of action. Reply 11. But that argument similarly fails. As Defendants have explained, Opp. 13, a federal court's equitable authority to "enjoin unlawful executive action is subject to express and implied statutory limitations," and a federal statute may "establish Congress's 'intent to foreclose' equitable relief." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 327–28 (2015). Just as the Medicaid Act in *Armstrong* reflected such an intent, *id.* at 328-29, PLCAA's text and structure likewise demonstrate that Congress did not intend to allow the kind of preemption claim that NSSF asserts here. NSSF asserts that "[n]othing in the PLCAA even hints that [it] may be enforced only defensively," Reply 11, but that is not correct. As just discussed, PLCAA's reference to an "action" and its many exceptions all indicate that Congress contemplated that PLCAA would be applied in the context of a particular lawsuit, not an affirmative preemption claim.

### III. NO INJUNCTION IS WARRANTED, BUT IF AN INJUNCTION WERE ISSUED, IT MUST BE NARROWLY TAILORED

The Court should deny preliminary relief here because, among other reasons, NSSF lacks standing and the case is not ripe. *NSSF v. Att'y Gen. of N.J.*, ___ F.4th

7

1  ___, 2023 WL 5286171, at *1-6 (3d Cir. 2023).  NSSF has not shown any concrete
2  plan to violate any of the provisions of AB 1594, and its broad assertions of liability
3  are not backed by any evidence.  *Id.* at *3; *see also San Diego Cty. Gun Rights*
4  *Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (courts "should not be forced to
5  decide constitutional questions in a vacuum" (alteration omitted)).  Similarly, NSSF
6  presents no evidence of a threat of enforcement.  *NSSF*, 2023 WL 5286171 at *4-5.
7  And even if it had, as with the New Jersey statute, any potential threat of enforcement
8  here carries less risk for NSSF's members because AB 1594's penalties are civil, not
9  criminal, in nature.  *Id.* at *5-6.
10      Even if the Court finds that NSSF has standing and the case is ripe, each of
11  NSSF's claims fail on the merits.  *See* Opp. 6-24.  NSSF nonetheless asserts that it
12  is entitled to a narrow injunction to ensure that Defendant does not
13  unconstitutionally enforce AB 1594 against its members.  Reply 8.  But such an
14  injunction would amount to nothing more than an "obey the law" injunction of the
15  sort that is disfavored.  *See, e.g. Metro Goldwyn-Mayer Studios, Inc. v. Grokster,*
16  *Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007).  Injunctive relief must be
17  narrowly tailored and specific.  *Id.* (citing Fed. R. Civ. P. 65(d)).  Accordingly,
18  courts generally refuse to issue "injunctions which merely require someone to 'obey
19  the law.'"  *Meinecke v. City of Seattle*, ___ F. Supp. 3d ___, 2023 WL 4131730 at
20  *6 (W.D. Wash. 2023) (quoting *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531
21  (11th Cir. 1996)); *Daniels v. Woodbury Cty.*, 742 F.2d 1128, 1134 (8th Cir. 1984)
22  ("[A]n injunction which does little or nothing more than order the defendants to
23  obey the law is not specific enough."); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824,
24  841–42 (7th Cir. 2013) ("An obey-the-law injunction departs from the traditional
25  equitable principle, codified in Rule 65(d) of the Federal Rules of Civil
26  Procedure.").[4]  The Court should refuse to enter such an injunction here.

---

[4] While the Ninth Circuit has yet to endorse a categorical rule against "obey

8

Defendant's Supplemental Brief in Support of Opposition to Motion for Preliminary
Injunction  (3:23-cv-00945-AGS-KSC)

Finally, if (hypothetically) the Court were to conclude that NSSF has standing, the case is ripe, and AB 1594 is unconstitutional or preempted in any particular respect, any injunction "must be 'narrowly tailored to remedy the specific harm shown'" and must be limited to the provisions the Court finds unlawful. *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019).[5]

## CONCLUSION

The motion for a preliminary injunction should be denied.

---

the law" injunctions, *F.T.C. v. EDebitPay, LLC.*, 695 F. 3d 938, 944 (9th Cir. 2012), those injunctions are typically issued only in the Federal Trade Commission, Securities and Exchange Commission, or Interstate Commerce Commission enforcement contexts. *Id.*; *see also S.E.C. v. Coldicutt*, 258 F.3d 939, 942 (9th Cir. 2001); *United States v. Miller*, 588 F.2d 1256, 1261 (9th Cir. 1978).

[5] In that vein, Defendant acknowledges that should the Court conclude that NSSF has standing to assert its First Amendment claim, the Ninth Circuit's recent decision in *Junior Sports Magazines, Inc. v. Bonta*, ___ F.4th ____, 2023 WL 5945879 (9th Cir. 2023) is controlling as to AB 1594's provision concerning the marketing of firearms to minors. *See* Cal. Civ. Code § 3273.51(c)(2)(C). Standing was uncontested in *Junior Sports*, but NSSF's complaint here does not contain any of the factual allegations—for example, that any of its members has ceased publishing or distributing advertisements of firearms targeted to minors—that were present in *Junior Sports*. 2023 WL 5945879, at *3. While NSSF appears to lack standing to assert a claim with respect to Section 3273.51(c)(2)(C), the Attorney General will not bring any enforcement action under that section premised solely on marketing lawful firearms to minors so long as *Junior Sports* remains binding circuit precedent. Further, even if this Court were to issue an injunction in light of *Junior Sports*, the injunction should not extend to any application of AB 1594 that does not specifically relate to the advertising or marketing of firearms to minors, including the statute's presumption regarding designing, selling, or marketing firearms to "other individuals who are legally prohibited from accessing firearms," Cal. Civ. Code § 3273.51(c)(2)(C). *Junior Sports* does not affect those applications.

Dated: September 21, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
CHRISTINA R.B. LÓPEZ
Deputy Attorney General

*/s/ S. Clinton Woods*
S. CLINTON WOODS
Deputy Attorney General
*Attorneys for Defendant Attorney General Rob Bonta*

SA2023302822
43889206.docx

# CERTIFICATE OF SERVICE

Case Name: *National Shooting Sports Foundation v. Rob Bonta*　　Case No. **3:23-cv-00945-AGS-KSC**

I hereby certify that on <u>September 21, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>September 21, 2023</u>, at San Francisco, California.

K. Figueroa-Lee
Declarant　　　　　　　　　　　　　　　　Signature

SA2023302822
43889138.docx