PAUL D. CLEMENT[*]
ERIN E. MURPHY[*]
MATTHEW D. ROWEN (Cal. Bar # 292292)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
matthew.rowen@clementmurphy.com
*admitted *pro hac vice*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Shooting Sports Foundation,<br><br>*Plaintiff*,<br><br>v.<br><br>Rob Bonta, Attorney General of California,<br><br>*Defendant*. | No. 3:23-cv-00945 |

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S ORDER SETTING ADDITIONAL BRIEFING TOPICS

**I.      Plaintiffs Are Likely To Succeed On Their Facial Challenges.**

**A.** If a law by its terms limits individual rights in ways that the Constitution does not allow, it is facially unconstitutional—even if a state could validly restrict some of the same rights under a more targeted law.  The Ninth Circuit's en banc decision in *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (2014), illustrates the point.  That case concerned a set of Arizona laws ("Prop 100") that barred undocumented immigrants charged with certain crimes from receiving "any form of bail or pretrial release." *Id.* at 775.  The plaintiffs, undocumented immigrants charged with crimes that triggered detention without bail, brought a class action arguing, *inter alia*, that Prop 100 violated substantive due process. *Id.* at 775-76.  The class included people who would be denied bail even if their individualized facts could be considered.  But the court still held Prop 100 "facially unconstitutional," because the process it provided *all* bail applicants failed the "heightened substantive due process scrutiny" that precedent required. *Id.* at 788-89.  The court went on to put a finer point on it: "Even persons who could be detained consistent with due process *under a different categorical statute* … could successfully challenge the Proposition 100 laws on the same grounds …, namely, failure to provide … an individualized determination." *Id.* at 789 (emphasis added). *That*, the court explained, is what it means for there to be "no set of circumstances" under which a law would be valid. *Id.*

The AG's contrary view of facial challenges—under which courts imagine hypothetical cases and ask if a hypothetical statute confined to *those* cases could survive constitutional scrutiny, *see, e.g.*, Dkt.23 at 7, 20—is confused.   The Supreme Court has repeatedly made clear that courts should *not* "speculate about 'hypothetical' or 'imaginary' cases" simply because a challenge is facial. *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 450 (2008).  That is because "the distinction between facial and as-applied challenges" makes no difference to the *merits* of a constitutional claim; it "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens*

*United v. FEC*, 558 U.S. 310, 331 (2010); *see, e.g.*, *United States v. Treasury Emps.*, 513 U.S. 454, 477-78 (1995) (contrasting "a facial challenge" with "a narrower remedy"). What drives the merits is the substantive constitutional standard: If "a statute fails the relevant constitutional test (such as strict scrutiny …)" *on its face*, without regard to the facts of any particular case, then "it can no longer be constitutionally applied to anyone—and thus there is 'no set of circumstances' in which the statute would be valid." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir. 2016) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012)); *accord Ezell v. City of Chicago*, 651 F.3d 684, 697-98 (7th Cir. 2011); *see, e.g.*, *City of L.A. v. Patel*, 576 U.S. 409, 419-23 (2015) (holding ordinance "facially unconstitutional because it fails to provide hotel operators with an opportunity for precompliance review," even though consented-to searches would be valid); *United States v. Lopez*, 514 U.S. 549, 561 (1995) (holding Gun-Free School Zones Act facially unconstitutional because it lacked a "jurisdictional element," even though it covered myriad cases where a firearm moved in interstate commerce).

Even accepting that the *Salerno* standard governs here, then, it ultimately makes no difference to the merits of NSSF's claims, as "*Salerno* directs a court to analyze the challenged statute under the applicable constitutional doctrine," so "it cannot itself conflict with any substantive constitutional law." Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement*, 48 Am. U. L. Rev. 359, 364 (1998). The question for this Court is simply whether AB 1594 violates the relevant substantive constitutional standard on its face. If it does, then it is unconstitutional *in all applications*, even if a subset of the rights that the statute restricts could validly be restricted under some hypothetical narrower statute.

**B.1.** On its face, AB 1594's ban on "abnormally dangerous" arms embraces a less protective standard than the one the Supreme Court has announced for purposes of deciding what arms lawfully can be sold. Whether a narrower law could validly "prohibit[] the marketing and sale of illegal automatic weapons," Dkt.23 at

7, thus makes no difference.  Section 3273.51(c) is facially unconstitutional.

*Bruen* confirms the point.  The relevant constitutional standard at issue there was that "law-abiding citizens" are entitled to "exercis[e] their right to keep and bear arms" regardless of whether they can "demonstrat[e] to government officers some special need" to do so.  *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2156 (2022).  Because New York's "good cause" law required *all* applicants to make that showing, it was unconstitutional on its face.  It did not matter that some people could satisfy the special-need standard, or that some applicants who were denied a permit under that regime might still be denied a permit under a different-but-constitutional regime (e.g., an applicant lawfully disqualified from exercising Second Amendment rights), just as it did not matter in *Lopez-Valenzuela* that some noncitizens would still be denied bail even under a regime where individualized facts were considered.  By its terms, the law imposed greater restrictions on constitutionally protected rights than the Constitution allows, so it was unconstitutional in all applications—i.e., facially unconstitutional.

The same is true here.  The Supreme Court and Ninth Circuit have made clear that if a state wants to ban a class of arms, the state bears "the burden" to prove that the class it has singled out consists of arms that "are dangerous and unusual"—i.e., they *not only* have "uniquely dangerous propensities," *but also* are not "commonly possessed by law-abiding citizens for lawful purposes."  *Teter v. Lopez*, 76 F.4th 938, 950 (9th Cir. 2023).  Yet under §3273.51(c), industry members "shall not manufacture, market," or "s[ell]" any firearm or related product that, in the state's view, "is abnormally dangerous," *regardless of how common it*.  That is a ban on arms—and, on its face, it allows the state to ban arms without first needing to prove that the arms in question are not "commonly possessed by law-abiding citizens for lawful purposes."  Section is thus 3273.51(c) is unconstitutional in all applications, i.e., facially unconstitutional, just as the laws in *Bruen* and *Lopez-Valenzuela* were.

Indeed, even if §3273.51(c) does not impose an outright ban, it still defies

*Bruen* in all of its applications, as it always and everywhere unconstitutionally shifts to the individual or entity seeking to exercise or facilitate constitutional rights the burden of proving entitlement to do so.   Section 3273.51(c) makes some arms "presumpti[vely]" unlawful based on their "features" or how they are "designed … or marketed."   §3273.51(c)(2).   The text gives no indication that there is any way to rebut that presumption, but even assuming that there is, §3273.51(c) still puts the shoe on the wrong foot.   *Bruen* made clear that "the Constitution 'presumptively guarantees' keeping and bearing" all bearable arms.   *Teter*, 76 F.4th at 949 (quoting *Bruen*, 142 S.Ct. at 2135).   So, under binding precedent, the *state* bears the burden to rebut that presumptive protection.   But under §3273.51(c), to the extent the presumption it creates can be rebutted at all, it is private parties who must do so.   Section 3273.51(c) is thus facially unconstitutional, because, again, just like the New York law in *Bruen*, it uniformly impedes the exercise of individual rights in ways that the Constitution as authoritatively interpreted does not allow.[1]

**B.2.** AB 1594's marketing restrictions facially violate the First Amendment because they too flunk the relevant constitutional test.   *See, e.g.*, *Project Veritas v. Schmidt*, 72 F.4th 1043, 1050-69 (9th Cir. 2023) (holding a "content-based speech restriction" "facially unconstitutional" because it was "not narrowly tailored").   Indeed, AB 1594's marketing restrictions are facially unconstitutional in the same way and for the same reasons that the Ninth Circuit just held that the marketing restrictions in Bus. & Prof. Code §22949.80 are likely facially unconstitutional.   *See Junior Sports Mags. Inc. v. Bonta*, --- F.4th ----, 2023 WL 5945879 (9th Cir. 2023).

Under §22949.80, "[a] firearm industry member shall not advertise, market,

---

[1] The same is true of the rest of AB 1594 under the Second Amendment.   Because the statute restricts conduct covered by the plain text of the Second Amendment and the sweeping liability it authorizes has no remotely similar historical analogue, *see* Dkt.29 at 6-8, it facially violates the Second Amendment, even if a narrower statute (such as one that only imposed liability for straw purchases) could pass muster.

Plaintiff's Brief in Response to Order Setting Additional Topics (3:23-cv-00945-AGS-KSC)

or arrange for placement of an advertising or marketing communication offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors." In *Junior Sports Magazines*, the Ninth Circuit held that "even assuming that intermediate scrutiny applies," §22949.80 is facially unconstitutional, because it restricts "protected speech" more broadly than the "*Central Hudson* framework" allows. *Id.* at *4.

The court reached that result for three reasons, all of which fully apply here. First, §22949.80 "facially regulates speech whose content concerns lawful activities and is not misleading," "encompass[ing]" not only "messages about legal use of guns by minors," but "speech directed at adults—who can lawfully purchase firearms—whenever that speech might also reach minors." *Id.* at *4-5. That is equally true here. *See* Dkt.14 at 17; *see also* Dkt.29 at 12 (noting that the AG has not denied that AB 1594 restricts commercial speech that is not false or misleading).

Second, "[u]nder *Central Hudson*, a state seeking to justify a restriction on commercial speech bears the burden to … provide evidence establishing 'that the harms it recites are real'" and "that its speech restriction will '*significantly*' alleviate those harms." 2023 WL 5945879, at *5. But the state "provided no evidence … that minors are unlawfully using firearms because of advertisements for guns by the firearm industry." *Id.* at *7. And because "firearm use by minors is not per se unlawful," the bare fact "that advertising can theoretically stimulate demand … is not enough," even if it may suffice in cases "involving limitations on tobacco and alcohol advertisements"; the state needed evidence proving that restricting a broad swath of firearm-related marketing would significantly decrease the "likelihood that minors will illegally *possess and use* those products"—but it had none. *Id.* at *6-7 & n.2. Once again, the same is true here. The state has put on no more evidence here than it did in *Junior Sports Magazines* (which was also a preliminary injunction case) to show either that the harms the state recites are real or that AB 1594's sweeping speech restrictions would significantly alleviate those purported harms.

Third, even if §22949.80 "significantly slashe[d] gun violence and unlawful use of firearms among minors," it still "imposes an excessive burden on protected speech." *Id.* at *7. By its terms, §22949.80 "ban[s] advertisements promoting safer guns for minors—for example, a hunting rifle designed for young hunters that has less recoil or that comes with a more secure trigger safety—if they are directed at minors and their parents." *Id.* at *8. "A speech restriction of that scope is not constitutionally sound under any standard of review." *Id.* The same is true here yet again, as AB 1594 likewise bans ads promoting safer guns for minors; after all, such ads are "targeted at minors" by definition. *See* Cal. Civ. Code §3273.51(c)(2)(C).

Notably, the court vindicated the plaintiffs' facial challenge in *Junior Sports Magazines* even though §22949.80 covers at least *some* speech that falls outside the First Amendment (e.g., ads that actually encourage unlawful acts). *Contra* Dkt.23 at 20 (arguing that "NSSF's facial challenge" fails "at the outset" because some, but not all, of the speech that "AB 1594's speech-restricting provisions apply to … is misleading or concerns unlawful conduct"). The AG's contrary conception of facial challenges—which would make nonsense of the tailoring inquiry[2]—has no basis in law or logic. Under binding precedent and first principles, AB 1594's marketing restrictions fail even intermediate scrutiny and are facially unconstitutional, i.e., in all applications. It therefore makes no difference whether a more targeted law (e.g., one covering only false marketing) could validly restrict some of the same speech.

---

[2] If, as the AG insists, the mere fact that a law burdens *some* unprotected speech ended the inquiry on a facial challenge, then courts would never need to ask whether a law burdens more speech than necessary. What the AG misses is that "[t]he lack of tailoring … is categorical—present in every case—as is the weakness of the State's interest." *Ams. for Prosperity Found. v. Bonta*, 141 S.Ct. 2373, 2387 (2021). That is why, for instance, "a content-neutral restriction on speech in a traditional public forum is facially unconstitutional if it does not survive the narrow tailoring inquiry, even though that ordinance might seem to have a number of legitimate applications." *Cutting v. City of Portland*, 802 F.3d 79, 86 (1st Cir. 2015).

**B.3.** "A statute is facially vague when it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *O'Handley v. Weber*, 62 F.4th 1145, 1164 (9th Cir. 2023); *see also Tingley v. Ferguson*, 47 F.4th 1055, 1090 (9th Cir. 2022) ("A law is void for vagueness if it 'lack[s] any ascertainable standard for inclusion and exclusion.'"). "When a statute clearly implicates free speech rights," it will fail "a facial challenge" if it is unclear "what the statute proscribes in the vast majority of its intended applications." *Humanitarian L. Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009). If a statute fails that test—as §§3273.51(b)(1) & (b)(2) plainly do, *see* Dkt.29 at 12-14—it is unconstitutional across the board, and there is no set of circumstances in which it is valid.

**C.** NSSF's extraterritoriality claim has "characteristics of both" facial and as-applied challenges: "The claim is 'as applied' in the sense that it does not seek to strike [AB 1594] in all its applications, but only to the extent it [applies to out-of-state conduct]. The claim is 'facial' in that it is not limited to [any] particular case, but challenges application of the law more broadly to all [out-of-state conduct]." *Doe v. Reed*, 561 U.S. 186, 194 (2010). Because "the relief that would follow" from this claim—"an injunction barring the [AG]" from seeking to hold an industry member liable under AB 1594 for out-of-state conduct—would "reach beyond the particular circumstances of [any one member]," the claim must "satisfy our standards for a facial challenge *to the extent of that reach*." *Id.* (emphasis added); *see, e.g.*, *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1322-23 (9th Cir. 2015) (en banc) (holding that a California law "facially violates the 'dormant' Commerce Clause" "as applied to out-of-state sales by California residents"). In other words, to prevail on this claim, all NSSF must show is that AB 1594 allows the state to impose liability for out-of-state conduct, but the Constitution prohibits the state from imposing liability for (i.e., "*directly* regulat[ing]") out-of-state conduct. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023).

**D.** Finally, while NSSF's preemption claim is a "pre-enforcement" challenge, it is *not* a "facial challenge" seeking "to preempt a state or federal statute" in toto. *See* Dkt.37 at 1. It is instead a pre-enforcement, as-applied challenge that seeks an injunction barring the AG from enforcing AB 1594 in a preempted manner.[3]

To be sure, NSSF alleges that the conflict with the PLCAA is apparent in the text of AB 1594, i.e., on its face. But a claim that is "facial" only in *that* sense does not require invalidating a law in toto. Scott A. Keller & Misha Tseytlin, *Applying Constitutional Decision Rules Versus Invalidating Statutes in Toto*, 98 Va. L. Rev. 301, 317-18 (2012). AB 1594 is preempted to the extent it authorizes suits against parties protected by the PLCAA that are not predicated on a knowing violation of a statute *other than AB 1594* that proximately caused the injuries for which redress is sought. To the extent AB 1594 sweeps beyond that, such as by authorizing suits against entities that are not federally licensed or predicated on some other exception, the AG can ask the Court to limit any injunction it may grant. *See, e.g.*, Perm. Inj., *Ind. State Conf. of the NAACP v. Lawson*, No. 1:17-cv-02897 (S.D. Ind. Nov. 2, 2021), Dkt.182 ("prohibiting Defendants from implementing" a provision of state law in a particular manner, because doing so would be preempted). But he cannot preclude NSSF from obtaining any relief at all by pointing to potentially valid applications of AB 1594 that are outside the scope of NSSF's preemption challenge.

## II.  The PLCAA Can Be Used Offensively.

For NSSF's preemption claim, Section 1983 and/or *Ex parte Young* supply a cause of action—and nothing in the PLCAA or any other law displaces either.

Section 1983 authorizes private parties to bring suit in federal court to enjoin state actors not just from violating "rights" secured by the Constitution, but from violating "immunities secured by the … laws [of the United States]" as well.  42

---

[3] That AB 1594 "has not yet been applied … does not preclude … a pre-enforcement, as-applied challenge." *Isaacson v. Horne*, 716 F.3d 1213, 1230 n.15 (9th Cir. 2013).

U.S.C. §1983; *see Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171 (2023) (Section 1983's "unqualified reference to 'laws'" sweeps in all federal laws).  That makes this an easy case.  The Ninth Circuit held in *Ileto* that the PLCAA "creates a substantive rule of law granting immunity to certain parties" (firearm manufacturers and sellers) "against certain types of claims" (qualified civil liability actions).  *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009); *accord In re Acad., Ltd.*, 625 S.W.3d 19, 33-34 (Tex. 2021).  Section 1983 thus provides industry members with a cause of action to vindicate that immunity in federal court.

While one cause of action is enough, NSSF has two.  "[A] preemption claim asserted in a pre-enforcement challenge is merely a claim in equity for injunctive relief, precisely the cause of action that the Supreme Court recognized in *Ex parte Young*."  *Just Puppies, Inc. v. Frosh*, 438 F.Supp.3d 448, 498 (D. Md. 2020).  And nothing in the PLCAA "displaces" the "equitable remedy available under *Ex parte Young*."  *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018).

To be sure, "Congress may enact statutes with a detailed remedial scheme that explicitly or implicitly displaces the judge-made equitable remedy available under *Ex parte Young*."  *Id.*  But the PLCAA contains no such scheme; it provides only a prohibition:  "A qualified civil liability action may not be brought in any Federal or State court."  15 U.S.C. §7902(a).  And unlike with statutes that have been held to displace *Ex parte Young* actions, the PLCAA does not "limit the remedies available against a state or public officials" found to have violated the clear prohibition against bringing qualified civil liability actions.  *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1188-89 (9th Cir. 2003).  This is thus not a situation in which Congress provided a specific, narrow remedy that allowing courts to enforce the general, broad *Young* remedy would defeat.  Nor does the PLCAA provide only a political remedy that is "judicially unadministrable," as was the case in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 328 (2015).  Courts enforce the PLCAA's clear command all the time in the defensive context, and they are every

bit as capable of doing so in the offensive context.

In sum: "If Congress intended to change the default remedial scheme" for conduct that violates the PLCAA, "it would either have said so expressly" in the text of the PLCAA or otherwise "enacted a detailed remedial scheme." *California v. Azuma Corp.*, 2023 WL 5835794, at *5 (E.D. Cal. Sept. 8, 2023).  It did neither.

## III.   The Scope Of Injunctive Relief, Considering Each Claim In Isolation.

<u>First Amendment</u>: The Court should enjoin the AG from bringing a civil action under §3273.52(c)(1) against NSSF or an NSSF member alleging that they violated any of §3273.51's marketing provisions.

<u>Second Amendment</u>: If NSSF prevails on its challenge to the "abnormally dangerous" arms ban, the Court should enjoin the AG from bringing a civil action under §3273.52(c)(1) against NSSF or an NSSF member alleging that they violated §3273.51(c).  If NSSF prevails on its challenge to the rest of AB 1594, the Court should enjoin the AG from bringing a civil action under §3273.52(c)(1) against NSSF or an NSSF member alleging that they violated any provision of §3273.51.

<u>Vagueness</u>: NSSF has challenged as void for vagueness both the "reasonable controls" provision and the "reasonable precautions" provision in §3273.51(b).  If the Court concludes that one or both of them is void for vagueness, it should enjoin the AG from bringing a civil action under §3273.52(c)(1) against NSSF or an NSSF member alleging a violation of the unconstitutionally vague provision(s).

<u>Extraterritoriality</u>: The Court should enjoin the AG from bringing a civil action under §3273.52(c)(1) against NSSF or an NSSF member alleging that they violated any provision of §3273.51 via conduct that took place outside of California.

<u>Preemption</u>: The Court should enjoin the AG from bringing a civil action under §3273.52(c)(1) against NSSF or an NSSF member that fails to allege that (1) the defendant violated some statute other than AB 1594; (2) the defendant knowingly violated whatever law serves as the predicate statute; and (3) the harms for which redress is sought satisfy traditional proximate cause.

Respectfully submitted,


s/Matthew D. Rowen
PAUL D. CLEMENT[*]
ERIN E. MURPHY[*]
MATTHEW D. ROWEN (Cal. Bar #292292)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
matthew.rowen@clementmurphy.com

[*] admitted *pro hac vice*

Attorneys for Plaintiff

Plaintiff's Brief in Response to Order Setting Additional Topics (3:23-cv-00945-AGS-KSC)