**Clement & Murphy**
PLLC

October 20, 2023

**Via CM/ECF**

The Chambers of the Hon. Andrew G. Schopler
United States District Court for the Southern District of California
Edward J. Schwartz United States Courthouse
221 West Broadway
Suite 5160
San Diego, CA 92101

      Re:    *National Shooting Sports Foundation v. Bonta*, No. 3:23-cv-00945

To the Chambers of the Hon. Andrew G. Schopler:

      Plaintiff National Shooting Sports Foundation submits the following response to the Attorney General's recent notice of supplemental authority regarding the decision in *National Shooting Sports Foundation v. Jennings*, No. 22-cv-1499 (D. Del. Sept. 8, 2023).

      There are two obvious problems with the Attorney General's letter. First, unlike the Delaware statute at issue in *Jennings*, California Assembly Bill 1594 ("AB 1594") does not merely authorize courts to hold members of the firearm industry liable for "unreasonable"-but-not-"unlawful" conduct. To the contrary, AB 1594 explicitly prohibits the "manufacture, market[ing]," and "sale" of certain firearms and "[]related product[s]." Cal. Civ. Code §3273.51(c). Nothing in Delaware's statute is remotely similar, let alone "nearly identical," to that prohibition. *Contra* Dkt.46 (Notice of Supp. Auth.) at 1. That makes the standing analysis considerably more straightforward here, as it is black-letter law that manufacturers and sellers have standing to challenge laws that purport to ban the products they make and sell. *See, e.g.*, *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1120-21 (9th Cir. 2022) (holding that a foreign association of foie gras sellers had standing to sue on behalf of its members to challenge California's ban on foie gras where "a member of the Association has alleged that it sells foie gras in the United States"); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (en banc) (holding that "the would-be operator of a gun store" had "standing to assert the subsidiary right to acquire arms on behalf of his potential customers"); *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979-81 (9th Cir. 2013) (similar). NSSF made this exact same point in response to the last letter the Attorney General filed, which discussed the Third Circuit's decision in the New Jersey case, and discussed the point further at oral argument—yet the Attorney General once again ignores it. That silence speaks volumes. Regardless of how the Court resolves NSSF's challenges to AB 1594's other substantive provisions, there is no serious question that NSSF has standing to challenge Civil Code §3273.51(c), which (unconstitutionally) bans a sweeping class of arms outright.

Second, under settled Ninth Circuit precedent, the Attorney General's actual and enduring (not "supposed") "failure to disavow enforcement" of AB 1594 in the manner that NSSF's members fear is enormously "[]material to standing." *Contra* Dkt.46 (Notice of Supp. Auth.) at 2. The Ninth Circuit has consistently "interpreted the government's failure to disavow enforcement of the law as weighing in favor of standing." *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022); *see, e.g.*, *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) ("That the federal government has not disavowed enforcement of the Offset Provision is evidence of an intent to enforce it."); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[T]he Government's failure to disavow application of the challenged provision [is] a factor in favor of a finding of standing."). Indeed, the Ninth Circuit recently held as much in a case *against Attorney General Bonta*. *See Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ("[T]he state's refusal to disavow enforcement of [the challenged law] … is strong evidence that the state intends to enforce the law and that [the plaintiffs] face a credible threat" of enforcement.). This is not a new development in Ninth Circuit standing law. *See, e.g.*, *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1173 (9th Cir. 2018) (finding Article III standing satisfied in part because "the Deputy Attorney General refused to stipulate that California will not enforce the statute"); *Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir. 1996) (finding Article III standing satisfied in part because "[t]he Attorney General of California ha[d] not stated affirmatively that his office will not enforce the civil statute"); *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 508 (9th Cir. 1991) (similar). Nor is it unique to this Circuit; on the contrary, it is entirely in keeping with Supreme Court precedent. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) (noting that the government had "not disavowed enforcement if petitioners make similar statements in the future," and finding that the "specter of enforcement" was "substantial"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (noting that the government's failure to disavow application of the challenged provision against parties like plaintiffs meant that the plaintiffs were "not without some reason in fearing prosecution"); *Dombrowski v. Pfister*, 380 U.S. 479, 494 (1965) ("So long as the statute remains available to the State the threat of prosecutions of protected expression is a real and substantial one").

The Third Circuit curiously lacks a similarly robust body of precedent on this point. To be sure, "the Third Circuit recognize[s] a refusal to disavow enforcement [is] a relevant consideration in determining the justiciability of a statutory challenge." *Jamal v. Kane*, 96 F.Supp.3d 447, 455-56 (M.D. Pa. 2015). But the Third Circuit's failure-to-disavow caselaw is far less entrenched than the Ninth Circuit's. *See, e.g.*, *Koons v. Platkin*, 2023 WL 3478604, at *35 (D.N.J. May 16, 2023) (relying in part on Ninth Circuit caselaw to tie the state's failure to "disavow[]" enforcement of the challenge law to Article III standing). Perhaps that explains why the district court in *Jennings* mistakenly believed that failure to disavow enforcement was "immaterial to standing because those arguments relied on events which took place after the filing of the lawsuit, and standing is determined at the time the action commences." Dkt.46 (Notice of Supp. Auth.) at 2. In all events, *Jennings*'

breezy dismissal of the state's disavowal is obviously inconsistent with Ninth Circuit standing law, which this Court of course is bound to apply.[1]

Respectfully submitted,

s/ Matthew D. Rowen
PAUL D. CLEMENT[*]
ERIN E. MURPHY[*]
MATTHEW D. ROWEN (Cal. Bar # 292292)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
matthew.rowen@clementmurphy.com

[*] admitted *pro hac vice*

Counsel for Plaintiff

---

[1] One final point on this issue. The question in a pre-enforcement case is necessarily predictive: Does the plaintiff face a credible threat of enforcement? The law enforcer can confirm that the threat is real by word or deed, and can undermine any claim to a credible threat by disavowing enforcement. The Attorney General plainly knows this and knows that disavowals that post-date the filing of a complaint are material to the standing analysis—because he himself often disavows enforcement in response to the filing of a complaint and then uses that disavowal to argue that there is no Article III standing. *See, e.g.*, *Abrera v. Newsom*, 2022 WL 17555524, at *1-3 (E.D. Cal. Dec. 9, 2022) (dismissing for lack of standing where the defendants, which included Attorney General Bonta, notified the plaintiff several weeks after the filing of his First Amended Complaint "that they would not enforce the statute against Plaintiff in any litigation related to this action").