PAUL D. CLEMENT*
ERIN E. MURPHY*
MATTHEW D. ROWEN (Cal. Bar # 292292)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
matthew.rowen@clementmurphy.com

*admitted *pro hac vice*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Shooting Sports Foundation,<br><br>*Plaintiff,*<br><br>v.<br><br>Rob Bonta, Attorney General of California,<br><br>*Defendant.* | Case:  No. 3:23-cv-00945<br><br>Date:  May 3, 2024, at 2:00 p.m.<br><br>Dept:  5C<br><br>Judge:  Hon. Andrew G. Schopler<br><br>Action Filed:  May 23, 2023 |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## MOTION TO AMEND JUDGMENT

After multiple rounds of briefing and more than five hours of oral argument, this Court entered an order concluding that California Civil Code §3273.51(c) likely violates the Commerce Clause and preliminarily enjoining the Attorney General from enforcing that provision against NSSF or its members. The AG now asks the Court to "amend" that order, arguing that the injunction sweeps too broadly given that it is based only on the Commerce Clause. The Court should deny the motion, which elides how §3273.51(c) actually works, ignores binding precedent, and raises arguments that could have been—indeed, should have been—raised earlier.

**1.** The AG forfeited any objection to the scope of injunctive relief. Following the first oral argument on NSSF's preliminary injunction motion, the Court ordered the parties to file supplemental briefs addressing, *inter alia*, "the appropriate scope of [an] injunction," "[i]f a preliminary injunction were entered," "*considering each ground for relief in isolation*." Dkt.37 (emphasis added). That was the time for the AG to raise arguments about "the appropriate scope of [any] injunction" if the Court were to rule that NSSF was likely to succeed on its Commerce Clause challenge to §3273.51(c) and no more (or on NSSF's preemption claim "in isolation," its vagueness claim "in isolation," its Second Amendment claim "in isolation," etc.).

But the AG chose not to do so. Despite addressing at length the two other topics the Court ordered the parties to address in their supplemental briefs, *see* Dkt.41 at 1-7, the AG said next to nothing about the scope-of-relief issue. All the AG offered on the scope-of-relief issue was the perfunctory and non-responsive truism that "any injunction 'must be narrowly tailored to remedy the specific harm shown' and must be limited to the provisions the Court finds unlawful." Dkt.41 at 9 (quoting *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019)). Not one word in the AG's supplemental brief addressed the proper scope of injunctive relief considering each of NSSF's claims "in isolation." *But see* Dkt.37. Indeed, the AG did not even address whether the scope of any injunctive relief would be different should NSSF prevail on its challenge only to §3273.51(c),

choosing instead simply to rehash his (flawed) standing and merits arguments *even when purportedly addressing the scope-of-relief issue*. *See* Dkt.41 at 7-8. The AG's failure to weigh in was not lost on this Court. *See* Dkt.48 at 14 (lamenting that the AG offered no "suggestion" about how the Court could enjoin only certain portions or applications of AB 1594, despite being ordered to do so).

The Court can and should deny the AG's motion on that basis alone. "A motion for reconsideration 'may *not* be used to raise arguments … for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (emphasis in original) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)); *accord Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments … that could have been raised prior to the entry of judgment.'" (quoting 11 Chales Alan Wright & Arthur Miller, *Federal Practice & Procedure* §2810.1 (2d ed. 1995))); *see, e.g. United States v. Castro-Guzman*, 2020 WL 3129655, at *1 (D. Ariz. June 12, 2020).

There is no reason to excuse the AG's forfeiture. The AG complains that "space limitations" prevented him from addressing the scope of injunctive relief in his supplemental brief. Dkt.51-1 at 6. That is demonstrably false. The AG used only 8.5 of the 10 pages the Court allotted. *See* Dkt.41. He could have used the remaining space to address the scope of injunctive relief, considering each claim in isolation, as this Court ordered. *See* Dkt.42 at 10 (NSSF doing so in less space). The AG's decision to leave space unused was obviously knowing, and it was likely strategic; the AG may not have wanted to provide a roadmap for an unfavorable ruling. Either way, he is not entitled to a do-over after seeing his initial effort fail.

**2.** Regardless, the AG's motion fails on the merits. Indeed, the AG's arguments are premised on a fundamental mischaracterization of §3273.51(c) and a fundamental misunderstanding of the doctrine underlying this Court's order.

**a.** The AG first asserts that "applications of [§3273.51(c)] … involv[ing] firearm products 'sold, made, or distributed in California'" "indisputably would not raise extraterritoriality concerns." Dkt.51-1 at 3. That is not remotely correct, let alone "indisputably" so. As NSSF has argued ad nauseam throughout this litigation, and as this Court recognized in its order, §3273.51(c) *does not regulate products*.[1] It regulates conduct. Specifically, §3273.51(c) makes it unlawful for a "firearm industry member" to "manufacture, market, import, offer for wholesale sale, or offer for retail sale a firearm-related product that is abnormally dangerous."

The AG's motion nonetheless conflates products with conduct at every turn. The AG requests that the Court "clarify that section 3273.51(c) may be applied lawfully to firearm products 'sold, made, or distributed in California,'" Dkt.51-1 at 4 (quoting Cal. Civ. Code §3273.50(d)(1)), on the theory that "there is no basis for enjoining the enforcement of section 3273.51(c) with respect to these transactions," Dkt.51-1 at 4. But what "transactions" is he talking about? "[P]roducts" are not "transactions"; sales are.[2] To say that "section 3273.51(c) may be applied lawfully *to firearm products*" with a California nexus thus would be to say that the AG may lawfully apply §3273.51(c) to the out-of-state manufacture of a product later sold in California or the out-of-state sale of a product originally manufactured in California—the very kinds of results that this Court (correctly) found incompatible with the Commerce Clause in a ruling that the AG does not ask the Court to disturb.

To the extent the AG really does mean to argue that the fact that a product was "made … in California" or "advertised in California" gives California the authority to regulate *out-of-state* conduct "involv[ing]" that product, Dkt.51-1 at 3,

---

[1] *Cf., e.g.*, Or. Rev. Stat. §30.900(1) (creating "a civil action … for damages … arising out of … [a]ny design, … manufacturing[,] or other defect in a product").

[2] So too are manufacturing and marketing, at least in this context, where the term "transactions" stands in for "conduct." *See, e.g.*, *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1324 (9th Cir. 2015) (en banc) (using terms interchangeably).

he is wrong. The Ninth Circuit squarely rejected that very argument in *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018).

*Daniels Sharpsmart* involved "an attempt to reach beyond the borders of California and control transactions that occur wholly outside of the State after the material in question … has been removed from the State." *Id.* at 615. The statute there, California's Medical Waste Management Act, "require[d] that California-generated biohazardous waste be disposed[] in the manner determined by California to advance public health and safety, regardless of the location in which disposal occurs." Appellants' Reply Br., *Daniels Sharpsmart, Inc. v. Smith*, No. 17-16424, 2018 WL 539586, at *21-22 (9th Cir. Jan. 16, 2018). The AG argued that the statute did not "impermissibly regulate[]" extraterritorially—even though he admitted that it directly regulated out-of-state conduct (namely, out-of-state waste disposal)—on the theory that it "only affects California-generated waste." *Id.* at *23-24. The Ninth Circuit squarely rejected that argument, holding that the mere fact that an item "had its origin in California" does not give California power to "regulate the use or disposal of [that] item" elsewhere. *Daniels Sharpsmart*, 889 F.3d at 616.[3]

That suffices to defeat the AG's argument that this Court somehow erred by entering an injunction that prevents him from regulating marketing or selling out of state whenever a product came from or has some other connection to California.

**b.** The AG's next argument—that he should be allowed to apply §3273.51(c) "to out-of-state transactions involving California residents," Dkt.51-1 at 4—fares no better. The AG does not point to a single case holding that a state may directly regulate out-of-state transactions just because they involve a state resident. (NSSF

---

[3] To be sure, *Daniels Sharpsmart* went on to hold that the state-officer defendants there were entitled to qualified immunity against any claims for money damages. *See* 889 F.3d at 616-18. But the Ninth Circuit could not have been more emphatic that, when it came to an injunction—the sole remedy at issue here—both the constitutional violation and the need for relief were clear. *See id.* at 615-16.

is not aware of one.) Instead, the AG reads dictum from *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), to mean that states have authority to regulate transactions involving their residents anywhere and everywhere, even if those transactions are fully lawful where they occur. *See* Dkt.51-1 at 4. But there is no reason to read *Ross* so expansively, and there is every reason not to.

The first and most obvious reason not to is *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320. Indeed, in asking the Court to "amend" the injunction to allow him to use §3723.51(c) to directly regulate out-of-state transactions, the AG is effectively asking this Court to overrule itself *and the en banc Ninth Circuit*. As this Court explained in its order, "the *Sam Francis* law *required* one Californian to be involved in the sale." Dkt.48 at 12 (emphasis added); *see also id.* ("In *Sam Francis*, a California law charged fine-art sellers a 5% royalty on any sales if 'the seller resides in California.'" (quoting 784 F.3d at 1322)); *see* Cal. Civ. Code §986(a). Yet that did not stop the Ninth Circuit from holding that §986(a) "facially violates the 'dormant' Commerce Clause" because it "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.'" 784 F.3d at 1322-23 (quoting *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989)).

The second reason the AG's request must be denied is *Edgar v. MITE Corp.*, 457 U.S. 624 (1982). The whole point of the *Ross* footnote the AG invokes was to clarify that the plurality opinion in *Edgar* remains good law. And although the *Ross* footnote described *Edgar* as involving "a law that *directly* regulated out-of-state transactions by those with *no* connection to the State," 598 U.S. at 376 n.1, all it meant was that *one side* of the transactions the *Edgar* law regulated consisted of "those with no connection to the State." Indeed, *Ross* could not possibly have meant otherwise. The Illinois law challenged in *Edgar* applied only to tender offers "for a corporation meeting two of the following conditions: the corporation has its principal executive office in Illinois, is organized under Illinois laws, or has at least

5

Plaintiff's Response in Opposition to Motion to Alter Judgment (3:23-cv-00945-AGS-KSC)

10% of its stated capital and paid-in surplus represented in Illinois." *Edgar*, 457 U.S. at 642 (plurality op.). And the specific tender offer in the case was for shares of a corporation with 27% of its shareholders "liv[ing] in Illinois." *Id.* One side of the transaction in *Edgar* was thus necessarily an Illinois party. Yet that was not enough to empower Illinois to directly regulate an out-of-state party's out-of-state tender offer to that in-state party.

      *Sam Francis* and *Edgar* are obviously binding on this Court, so this Court need go no further to reject the AG's arguments. But it is worth underscoring that those decisions are no outliers. Many cases hold that a state may not directly regulate out-of-state transactions just because one of the transacting parties is a state resident. *See, e.g.*, *Styczinski v. Arnold*, 46 F.4th 907, 913-14 (8th Cir. 2022) (invalidating a Minnesota law that regulated the sale of bullion "between a dealer and a consumer who lives in Minnesota," and rejecting the argument that a state has "*carte blanche* to regulate all conduct of residents regardless of where it occurs"); *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 662, 667-78 (7th Cir. 2010) (invalidating an Indiana law that directly regulated title loans made outside of Indiana whenever the loanee was an Indianan). In contrast, NSSF is not aware of any federal appellate decision adopting the AG's rule that states may regulate all transactions involving residents, regardless of how far-flung. "States may not mandate compliance with their preferred policies in wholly out-of-state transactions," *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1103 (9th Cir. 2013), even if an out-of-state transaction involves products that have a connection to the regulating state, *Daniels Sharpsmart*, 889 F.3d at 615-16, or one of the state's own residents, *Sam Francis*, 784 F.3d at 1324.

      **3.** Severability is not a basis for altering the injunction. That doctrine does not grant federal courts the power to rewrite laws to salvage them. *See, e.g.*, *Yu Cong Eng v. Trinidad*, 271 U.S. 500, 518 (1926) (Taft, C.J.) ("[A]mendment may not be substituted for construction, and … a court may not exercise legislative

functions to save [a] law from conflict with constitutional limitation."); *United States v. Reese*, 92 U.S. 214, 221 (1875) ("To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one.  This is no part of our duty."); *cf. Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 329 (2006).  Yet the AG's requested relief would transform both the statute and the Court's injunction.  The former is impermissible; the latter is unjustified.  In all events, the AG had an opportunity to argue about severability in the scope-of-relief section of his supplemental brief and chose not to take it.  He cannot do so now.

* * *

If the Court decides to modify the injunction despite the foregoing, it should do so only in a manner consistent with its earlier order and NSSF's requested relief.  *See* Dkt.42 at 10.  Moreover, narrowing the scope of injunctive relief in any respect would be a new beginning, not the end, of preliminary injunction proceedings before this Court.  As things stand, the injunction grants NSSF complete (albeit preliminary) relief vis-à-vis §3273.51(c).  If the Court were to narrow that injunction, however, the Court would be required to address whether NSSF is entitled to complete relief by virtue of any or all of its other claims—as the AG admits.  *See* Dkt.51-1 at 6 n.3; *cf.* Dkt.48 at 14 (recognizing that the relief granted obviated the need to "address the remaining causes of action").  For the reasons discussed in NSSF's prior briefing and at argument, NSSF submits that it is likewise likely to succeed on the merits of its other challenges to that provision of AB 1594.  *See* Dkt.14 at 9-12, 16-19; Dkt.29 at 4-8, 11-14.  But for the reasons set forth above, there is no need to wade into those issues; the AG's motion should be denied.

Respectfully submitted,

s/Matthew D. Rowen
PAUL D. CLEMENT*
ERIN E. MURPHY*
MATTHEW D. ROWEN (Cal. Bar #292292)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
matthew.rowen@clementmurphy.com

* admitted *pro hac vice*

Attorneys for Plaintiff