UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION,<br><br>                                 Plaintiff,<br><br>v.<br><br>Rob BONTA, Attorney General of California,<br><br>                                 Defendant. | Case No.:  23-cv-0945-AGS-KSC<br><br>**ORDER DENYING MOTION TO AMEND PRELIMINARY INJUNCTION (ECF 51)** |

Based on a likely Commerce Clause violation, this Court preliminarily enjoined a California regulation on "abnormally dangerous" firearm-related products, Cal. Civ. Code § 3273.51(c). (ECF 48.) Under Federal Rule of Civil Procedure 59(e), the State requests reconsideration. Specifically, the Attorney General seeks to narrow that injunction by allowing enforcement for "firearm products that are (1) sold, made, or distributed in California, or (2) sold in other states to California residents." (ECF 51-1, at 2.) Because the State has not carried its burden of showing clear error—and, at any rate, should have made these arguments sooner—the reconsideration motion is denied.

## RECONSIDERATION STANDARD

"A motion for reconsideration under Rule 59(e) should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc) (cleaned up). It is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022). And it "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier." *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Trust*, 979 F.3d 1209, 1218 (9th Cir. 2020). The moving party has a "heavy burden" to establish error serious enough to require a Rule 59(e) amendment. *Haywood v. San Diego*

*Sheriff*, No. 19cv1784-MMA (RBB), 2019 WL 5086560, at *1 (S.D. Cal. Oct. 10, 2019); *accord Hollander v. Members of Bd. of Regents of Univ. of New York*, 524 F. App'x 727, 729 (2d Cir. 2013) (noting Rule 59(e) movant's "heavy burden").

# DISCUSSION

The Attorney General offers no newly discovered evidence nor legal changes, so this Court's inquiry is confined to, at most, two questions: Has the State carried its burden of showing clear error? Even if so, should it have raised these supposedly clear legal arguments earlier?

## A. Clear-Error Analysis

The Attorney General's first hurdle is demonstrating that it was clear error to enjoin this gun regulation altogether, rather than adopting the State's newly proposed bounds. "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must be dead wrong." *United States v. Hollis*, 506 F.3d 415, 421 (5th Cir. 2007). This Court has two tools it could have used to "save portions of the statute": "severance" or "fashioning judicial limitations on the scope of its coverage." *See Reno v. American Civil Liberties Union*, 521 U.S. 844, 864 (1997). The State argues for both.

### 1. *Severability*

Severance is "textual surgery"—excising unconstitutional parts "from the statute, leaving the rest . . . standing." *Reno*, 521 U.S. at 883. It involves removing words, not "insert[ing] missing terms into the statute." *See Yamada v. Snipes*, 786 F.3d 1182, 1188 (9th Cir. 2015); *see also Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1325–26 (9th Cir. 2015) (en banc) (discussing California's severability requirements, including whether "the invalid part[] can be *removed as a whole*" (emphasis added)).

Although the State urges severance, it fails to specify any statutory language that this Court should cut. In fact, the only way to achieve the Attorney General's aim— allowing enforcement as to "products that are (1) sold, made, or distributed in California, or (2) sold in other states to California residents" (ECF 51-1, at 2)—would be to shoehorn those limitations into the regulation, like so:

>  A firearm industry member shall not manufacture, market, import, offer for wholesale sale, or offer for retail sale a firearm-related product [*that is sold, made, or distributed in California, or sold in others states to California residents, and*] that is abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety in California.

*See* Cal. Civ. Code § 3273.51(c) (bracketed, italicized text added). This would amount to lawmaking with a legislative pen, not severing with a judicial scalpel.

Nor has the State pointed to any severability caselaw that suggests this Court may jot new words in a statute's margins. Each of the severance rulings the Attorney General relies on salvaged an unconstitutional enactment by *removing* language, not adding to it. *See Sam Francis*, 784 F.3d at 1325 (removing "the invalid clause—'the seller resides in California or'—from the remainder of the Act"); *Triumph Foods, LLC v. Campbell*, 715 F. Supp. 3d 143, 154 (D. Mass. 2024) (deleting "the slaughterhouse exception" from "the rest of the Act"); *American Meat Inst. v. Barnett*, 64 F. Supp. 2d 906, 922–23 (D.S.D. 1999) (striking parts of "pricing statute," while preserving sections "not directly tied to any Constitutionally infirm portion").

In short, the State has not met its burden of identifying any statutory words that *clearly* should have been cut to attain a narrower injunction. The Court still "sees no way for the 'abnormally dangerous' gun regulation to pass constitutional muster by severing . . . only portions of it." (ECF 48, at 14.)

**2.  *Judicial Reformation***

Alternatively, the Attorney General endorses the more fraught judicial exercise of effectively reworking the regulation to bring it within constitutional parameters. California permits "judicial reformation—including 'rewriting'—of statutes to preserve constitutionality" when a judge "can conclude with confidence that (i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred such a reformed version" over "invalidation." *Kopp v. Fair Pol. Pracs. Comm'n*, 905 P.2d 1248, 1251, 1259 (Cal. 1995). The State has not carried—nor even attempted to carry—its burden of

establishing these difficult prerequisites. (*See, e.g.*, ECF 51-1, at 4 (discussing "severability," but not the legislative attitude toward judicial reformation).)

Even if such judicial redrafting were advisable, the State's edits would not fix the Commerce Clause problem. Take the Attorney General's proposed requirement that this gun ban only reach out-of-state sales when the buyers are "California residents." This revised version would still cover out-of-state merchants selling certain out-of-state-made guns in transactions conducted entirely outside California. So, the law would continue to violate "the dormant Commerce Clause as an impermissible regulation of wholly out-of-state conduct." *See Sam Francis*, 784 F.3d at 1324 (striking down a California regulation of "out-of-state art sales where 'the seller resides in California'"). The regulation's additional state-nexus criteria—such as the proviso that the firearm is "likely to create an unreasonable risk of harm . . . in California," Cal. Civ. Code § 3273.51(c)—do not change the analysis. Direct regulation of extraterritorial economic transactions is "invalid per se," even if "the commerce has effects within the State." *Sam Francis*, 784 F.3d at 1323–24.

For similar reasons, the Attorney General has not clearly shown that his other proffered constraint—limiting enforcement to guns "sold, made, or distributed in California"—would cure the constitutional deficiency. Even with that amendment, the law would still reach out-of-state merchants conducting out-of-state transactions that are perfectly legal in their own state, so long as the gun involved was once sold, made, or distributed in California. "The mere fact that some nexus to a state exists will not justify regulation of wholly out-of-state transactions." *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018). "Were it otherwise, California could purport to regulate the use . . . of any item . . . everywhere in the country if it had its origin in California." *Id.* at 616.

Thus, the State has not shown that there were clear and permissible ways to enjoin only this law's unconstitutional applications, while leaving it otherwise in force. On that basis alone, the reconsideration motion fails.

## B. Late Arguments

The Court also denies reconsideration because Rule 59(e) motions "may *not* be used to raise arguments . . . for the first time when they could reasonably have been raised earlier." *See Wells Fargo*, 979 F.3d at 1218. The State not only had a reasonable opportunity to make these points previously, it was *ordered* to do so. Before ruling, the Court called for supplemental briefing on, among other things, "the appropriate scope of [any] injunction, considering each ground for relief in isolation." (ECF 37.) The Attorney General's answer to that question *now* is about 21 words: restrict § 3273.51(c) to products "(1) sold, made, or distributed in California, or (2) sold in other states to California residents." (ECF 51-1, at 2.) For good measure, the State belatedly claims that these scope-narrowing tweaks are so obvious that this Court clearly erred by not thinking them up on its own. Yet, at the time, the Attorney General offered none of these suggestions, nor any substantive response to the Court's question. The entirety of the State's pre-ruling briefing on this issue was to unhelpfully recite the time-worn axiom that "any injunction must be narrowly tailored to remedy the specific harm shown and must be limited to the provisions the Court finds unlawful." (23 words) (ECF 41, at 10 (cleaned up).)

What's more, the State offers a flimsy excuse for omitting its proposals earlier: "space limitations." (ECF 51-1, at 6.) But its supplemental-briefing argument on *all* issues spanned barely 9 of the 10 pages allowed. (*See* ECF 37; ECF 41, at 2–10.) And the Attorney General never asked permission to file excess pages. (*Cf.* ECF 27 (previously granting such a request).) Given these troubling facts, plaintiff suspects that the State's "decision to leave space unused"—and to avoid addressing the specific "scope of injunctive relief" as to each claim—was "knowing" and "strategic." (ECF 54, at 3.)

At this stage of the proceedings, however, the Court gives defense counsel the benefit of the doubt. It finds no sanctionable violation of the supplemental-briefing order, nor of counsel's duty of candor. But the State is on notice that the parties must comply with all court orders fully. And they must respond to any judicial questions or requests candidly and completely. The Court will not indulge the same presumptions in the future.

## CONCLUSION

Defendant's motion to reconsider and to amend the preliminary injunction is **DENIED**.

Dated: March 31, 2025

_____
Hon. Andrew G. Schopler
United States District Judge