ROB BONTA
Attorney General of California
ANNA FERRARI
Supervising Deputy Attorney General
S. CLINTON WOODS
RYAN D. EASON
Deputy Attorneys General
State Bar No. 342757
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6505
  Fax:  (916) 731-2124
  E-mail:  Ryan.Eason@doj.ca.gov
*Attorneys for Defendant Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NATIONAL SHOOTING SPORTS FOUNDATION,**<br><br>                    Plaintiff,<br><br>**v.**<br><br>**ROB BONTA, Attorney General of California,**<br><br>                    Defendant. | 3:23-cv-00945-AGS-KSC<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:     Hon. Andrew G. Schopler<br>Action Filed: May 23, 2023 |

# TABLE OF CONTENTS

Table of Contents ........................................................................................................ 2
Table of Authorities .................................................................................................... 3
Introduction ................................................................................................................ 5
Background ................................................................................................................ 5
Argument .................................................................................................................... 7
    I.    AB 1263 Reinforces that NSSF's Pre-Enforcement Commerce Clause Claim is Non-Justiciable .................................................................. 7
        A.    As Before, NSSF Lacks Standing Because It Articulates No "Concrete Plan" to Violate Section 3273.51(c) .................... 7
        B.    Even if NSSF Had Standing at the Initiation of Its Lawsuit, AB 1263 Moots Its Case ............................................... 8
        C.    NSSF's Claim is Not Ripe ......................................................... 10
        D.    The Court Should Apply Section 3273.51(c) as Amended by AB 1263 ............................................................................... 11
    II.    AB 1263 Does Not Affect the Merits of NSSF's Commerce Clause Claim, Which Remains Deficient ........................................... 13
Conclusion ............................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*Bayer v. Neiman Marcus Group, Inc.*
   861 F.3d 853 (9th Cir. 2017) ................................................................................ 9

*Bowen v. Georgetown Univ. Hosp.*
   488 U.S. 204 (1988) ........................................................................................... 12

*Bradley v. School Bd. of City of Richmond*
   416 U.S. 696 (1974) ..................................................................................... 12, 13

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*
   528 U.S. 167 (2000) ............................................................................................. 8

*Junior Sports Magazine, Inc. v. Bonta*
   2:22-cv-04663 (C.D. Cal. Oct. 1, 2025) ............................................................ 12

*Los Angeles Unified Sch. Dist. v. State of California*
   229 Cal.App.3d 552 (1991) ............................................................................... 11

*San Diego Cty. Gun Rights Comm. v. Reno*
   98 F.3d 1121 (9th Cir. 1996) ............................................................................. 11

*Stender v. Lucky Stores, Inc.*
   780 F.Supp. 1302 (N.D. Cal. 1992) ................................................................... 12

*Teter v. Lopez*
   125 F.4th 1301 (9th Cir. 2025) ...................................................................... 9, 10

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000) ......................................................................... 7, 8

**STATUTES**

2022 Cal. Stat. ch. 98 .............................................................................................. 5, 12

2025 Cal. Stat. ch. 636 ......................................................................................... 6, 7, 9

California Civil Code
  § 3273.50(d) .................................................................................................. 6, 8, 11
  § 3273.51(c) ........................................................................................................ *passim*
  § 3273.51(c)(2)(A) ...................................................................................................... 9
  § 3273.51(c)(2)(B) ...................................................................................................... 9
  § 3273.51(c)(2)(C) ................................................................................................... 7, 9

# INTRODUCTION

Plaintiff National Shooting Sports Foundation's (NSSF) justiciability argument rests on a load-bearing premise: that its members' manufacture, sale, and distribution of youth-model firearms[1] expose them to liability. The Attorney General maintains this argument was always deficient because NSSF never demonstrated that its members make, sell, or distribute these products with direct connections to California. However, AB 1263, which revised the challenged statute and became effective as of January 1, 2026, confirms that *even if* NSSF had pre-enforcement standing at the time of its Complaint, its sole remaining claim is now moot. Under AB 1263, the challenged statute no longer presumes that firearm-related products targeted at minors, including youth-model firearms, are abnormally dangerous. But youth-model firearms were the *only* product that NSSF members identified that they feared would expose them to liability. It was clear before that NSSF's case was not justiciable, and it is even clearer now. For this reason and those argued in the Attorney General's Cross-Motion for Summary Judgment, the Attorney General is entitled to summary judgment on NSSF's claim.

# BACKGROUND

In 2022, the California Legislature enacted AB 1594, the Firearm Industry Responsibility Act (FIRA). 2022 Cal. Stat. ch. 98. FIRA established a civil standard of responsible business conduct for the firearm industry that, among other things, prohibits the manufacture, sale, or marketing of "firearm-related product[s]" that are "abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety." *Id.* § 3. Prior to January 1, 2026, the statute presumed that a firearm-related product is abnormally dangerous[2] if its features are "most

---

[1] According to NSSF, youth-model firearms are those of "smaller size and lighter weight than standard models and obviously designed in a manner that is targeted at minors." Dkt. 27 at 1 (cleaned up and citation omitted).

[2] Though the statute also states that a firearm-related product must be "likely to create an unreasonable risk of harm to public health and safety" to fall under the (continued…)

suitable for assaultive purposes instead of lawful self-defense," it is "designed, sold, or marketed in a manner that foreseeably promotes conversion of legal firearm-related products into illegal firearm-related products," or it is "designed, sold, or marketed in a manner that is targeted *at minors* or other individuals who are legally prohibited from accessing firearms." *Id.* (emphasis added).

Furthermore, FIRA specifically defines "firearm-related products" as any firearm, precursor part, or firearm accessory "that meets any of the following conditions: (1) The item is sold, made, or distributed in California[,] (2) The item is intended to be sold or distributed in California[, or] (3) The item is or was possessed in California and it was reasonably foreseeable that the item would be possessed in California." Cal. Civ. Code § 3273.50(d). Thus, section 3273.51(c) only regulates abnormally dangerous weapons that have a direct connection to California by way of one of these three criteria.

The Court is well familiar with the procedural history. Most recently, while the parties' motions for summary judgment have been pending, a separate bill, AB 1263, took effect on January 1, 2026. AB 1263 made several changes to existing firearm regulations[3] but only one change to the subsection that NSSF challenges.

---

presumption, Cal. Civ. Code § 3273.51(c), this phrase is intended to be concomitant with "abnormally dangerous."

[3] In summary, AB 1263 (1) adds notice, verification, and shipping requirements for firearm industry members selling certain firearm accessories, firearm manufacturing machines, or firearm barrels unattached to a firearm to purchasers in California, (2) updates definitions of "firearm accessory," "firearm manufacturing machine," and "digital firearm manufacturing code," (3) authorizes persons harmed by a violation to bring civil actions against defendants who distribute digital firearm manufacturing code to individuals in California who are not licensed to manufacture firearms, (4) establishes a rebuttable presumption of how a person may violate the restriction on distribution of digital firearms manufacturing code to unlicensed individuals in California, (5) creates new civil and criminal liability for engaging in or facilitating the unlawful manufacture of firearms, and (6) allows persons who are harmed and the Attorney General, city attorney, and county counsel to bring civil actions against defendants who violate certain provisions of the act. *See* 2025 Cal. Stat. ch. 636. None of these provisions bear on NSSF's existing claims in this case.

AB 1263 deleted the words "minors or other" from section 3273.51(c)(2)(C)—in effect removing firearm-related products that are designed, sold, or marketed in a manner targeted at minors from the presumption that such products are abnormally dangerous. 2025 Cal. Stat. ch. 636.

On January 9, 2026, the Court instructed both parties to submit additional briefing discussing the impact of AB 1263 on their arguments, with particular focus on standing.[4] Dkt. 79.

## ARGUMENT

### I. AB 1263 REINFORCES THAT NSSF'S PRE-ENFORCEMENT COMMERCE CLAUSE CLAIM IS NON-JUSTICIABLE

#### A. As Before, NSSF Lacks Standing Because It Articulates No "Concrete Plan" to Violate Section 3273.51(c)

NSSF does not show that it or its members have a "concrete plan" to violate section 3273.51(c) as amended by AB 1263. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). NSSF's only assertion of injury comes from statements by its members that they make, sell, or distribute products that allegedly fall within section 3273.51(c)'s presumption of abnormally dangerous firearm-related products. *See* Dkts. 14-1 (Reid Decl.), 14-2 (Cupero Decl.), 74-2 (McNamara Decl.)[5]. However, these declarations only cite *one* type of product that NSSF's members fear will expose them to liability: youth-model firearms. *See* Reid Decl. ¶ 14; Cupero Decl. ¶ 15; McNamara Decl. ¶ 10 (citing only paragraph 14 of the Reid Declaration and paragraph 15 of the Cupero Declaration for the statement that "[m]any NSSF members manufacture, distribute, import, market, or sell products that fall within the scope of § 3273.51(c)"). Further, at the November 20, 2025, hearing on the motions for summary judgment,

---

[4] Though the Court's order did not instruct the Attorney General to submit a reply to NSSF's supplemental brief, the Attorney General reserves the right to request a reply if NSSF raises new arguments in its supplemental brief.

[5] The Attorney General reiterates its objection to the Court's consideration of the newly submitted declaration of Mr. McNamara. *See* Dkt. 75-1 at 6 n.2.

counsel for NSSF repeatedly emphasized that its members have a concrete plan to violate section 3273.51(c) specifically, but solely, because its members make, sell, or distribute youth-model firearms. Dkt. 83 at 4, 6, 50-51, 53. Indeed, this Court based its ruling that NSSF had pre-enforcement standing to challenge section 3273.51(c) on evidence concerning the manufacture, sale, and distribution of youth-model firearms. Dkt. 48 at 5. Beyond these youth-model firearms, NSSF and its members propose no evidence that section 3273.51(c) implicates their conduct—they merely vaguely speculate that their manufacture, sale, or distribution of other "products" may create liability. *See* McNamara Decl. ¶ 10.

Even conceding that section 3273.51(c), as enacted by AB 1594, could have applied to youth-model firearms that NSSF members make, sell, and distribute, NSSF's evidence was always insufficient to establish pre-enforcement standing. Section 3273.51(c) only presumes firearm-related products *directed at California* are abnormally dangerous, *see* Cal. Civ. Code § 3273.50(d), and NSSF never provided any evidence that its members directed its products at California, *see* Dkt. 75-1 at 6. Therefore, NSSF's evidence never even revealed a "hypothetical intent to violate the law," *Thomas*, 220 F.3d at 1139—indeed, it did not demonstrate *any* intent to violate the law.

**B.  Even if NSSF Had Standing at the Initiation of Its Lawsuit, AB 1263 Moots Its Case**

Regardless of whether NSSF had pre-enforcement standing at the initiation of the lawsuit, AB 1263 indisputably mooted its case by removing firearm-related products targeted at minors from the statute's ambit. Mootness is "the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 170 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). In other words, once a prerequisite to standing

disappears, the power of a federal court to decide the merits of the claim "evaporates." *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 862 (9th Cir. 2017). Further, the Ninth Circuit "'presume[s] the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it.'" *Teter v. Lopez*, 125 F.4th 1301, 1307 (9th Cir. 2025) (en banc) (quoting *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019)). Where the challenged provision has been amended rather than repealed, the question of whether the Legislature may reasonably be expected to enact a "similar" law turns on whether the amended law that the Legislature *did* enact is sufficiently similar to the original law with respect to the alleged constitutional deficiency at issue. *Id*.

As noted above, NSSF cites only one product—youth-model firearms—that could even plausibly form the basis of its members' "concrete plan" to violate section 3273.51(c). And NSSF claims that youth-model firearms fall under section 3273.51(c)'s presumption only because its members design, sell, and market them in a manner targeted at minors. *See* Dkt. 27 at 1; Reid Decl. ¶ 14; Cupero Decl. ¶ 15. It does not claim that youth-model firearms conflict with section 3273.51(c) because they are primarily assaultive in nature, *see* Cal. Civ. Code § 3273.51(c)(2)(A), encourage the transformation of lawful firearm-related products into illegal firearm-related products, *see id.* § 3273.51(c)(2)(B), or that they are targeted at individuals who are legally prohibited from accessing firearms, *see id.* § 3273.51(c)(2)(C). But AB 1263 clarifies that firearm-related products are not presumptively abnormally dangerous under the statute solely because they are targeted at minors. *See* 2025 Cal. Stat. ch. 636 § 2. Therefore, though AB 1263 only removed the words "minors or other" from the statute, those few words constituted the only portion of 3273.51(c) for which NSSF proposed any plausible

evidence of pre-enforcement standing. Accordingly, as it relates to NSSF's claim, the amended statute is not at all similar to its prior form.

*Teter* provides an illustrative comparison. *Teter* concerned a challenge to a Hawaii statute prohibiting butterfly knives. *Teter*, 125 F.4th at 1304. During the course of that litigation, Hawaii enacted a bill amending the challenged statute to no longer prohibit butterfly knives. *Id.* at 1306. The Ninth Circuit reasoned that the amended statute did not "burden [plaintiff] in the same fundamental way" as the prior version because it did not prohibit ownership, possession, or use of butterfly knives except insofar as the possession or use was for "the commission of a separate felony or misdemeanor," a provision plaintiff did not challenge. *Id.* at 1307 (citations and quotations omitted). The *Teter* court held that the case was moot because the amended statute was "sufficiently altered so as to present a substantially different controversy," and gave plaintiff "everything [he] hoped to achieve." *Id.* at 1308 (citations and quotations omitted). The similarities to NSSF's case are apparent. NSSF only attempts to provide evidence that section 3273.51(c) implicates one product that its members make, sell, or distribute—youth-model firearms. AB 1263 updated section 3273.51(c) so that it does not presume those products are presumptively abnormally dangerous unless they meet other conditions of the statute that NSSF does not present any evidence of intending to violate. Accordingly, like the plaintiff in *Teter*, NSSF has achieved what it claims to want—its members can design, sell, or market firearm-related products in a manner that is targeted at minors without running afoul of section 3273.51(c). Thus, there is no "case or controversy" left for the Court to decide.

### C. NSSF's Claim is Not Ripe

Even if the Complaint met Article III's justiciability requirements, the Court should decline to exercise jurisdiction because this case is not prudentially ripe. That was true before AB 1263, *see* Dkt. 75-1 at 8-9, and it is even more true after AB 1263.

This pre-enforcement, facial challenge does not present issues that are fit for judicial resolution. NSSF's speculations regarding the potential ramifications of the challenged section are "devoid of any factual context whatsoever." *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). The closest NSSF comes to presenting specific evidence is in the declarations asserting that its members produce youth-model firearms that they argue expose them to liability under section 3273.51(c). Reid Decl. ¶ 14, Cupero Decl. ¶ 15. This claim was always wrong (as explained above, FIRA only presumes firearm-related products *directed at California* are abnormally dangerous, *see* Cal. Civ. Code § 3273.50(d)), but AB 1263 clarifies that section 3273.51(c)'s presumption does not implicate these youth-model firearms solely because they are targeted at minors. Therefore, NSSF is left with nothing more than speculative concern about enforcement.

### D. The Court Should Apply Section 3273.51(c) as Amended by AB 1263

To the extent NSSF argues that the Court should not apply AB 1263 to claims that predate it, but rather construe section 3273.51(c) as originally enacted by AB 1594, this argument fails.

As an initial matter, no evidence in the record shows that the Attorney General would have enforced, or will enforce, the version of section 3273.51(c) that existed before AB 1263. His office has not enforced the subsection against any actor for making, selling, or distributing firearm-related products targeted at minors prior to AB 1263's enactment, *see* Dkt. 76 at 3 (conceding the same), and any attempt to do so now would necessarily fail, *see Los Angeles Unified Sch. Dist. v. State of California*, 229 Cal.App.3d 552, 557 (1991) ("when a right of action . . . depends solely upon a statute, the repeal of the statute destroys the right unless the right has been reduced to final judgment or unless the repealing statute contains a saving

clause protecting the right in a pending litigation".[6]) (quoting *Krause v. Rarity*, 210 Cal. 664, 652 (1930)).[7] Without any possibility of pre-AB 1263 enforcement, any attempt by the Court to answer whether NSSF's claim against the prior version of section 3273.51(c) has merit would be a purely academic exercise.

Moreover, it is axiomatic that a "court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 (1974).[8] Here, there is no statutory direction or legislative history to suggest that the Court should not consider AB 1263. Therefore, NSSF would be left to argue that it is a "manifest injustice" to apply AB 1263 to this case. The Supreme Court in *Bradley* listed three factors to consider when determining if retroactive application would result in manifest injustice: (1) the nature and identity of the parties, (2) the nature of the rights affected, and (3) the nature of the impact of the change of law on those rights. *Id.* at 717.

The first prong obviously favors retroactivity here. In looking to "the nature and identity of the parties," the Supreme Court in *Bradley* distinguished between "mere private cases between individuals" in which courts should be cautious in

---

[6] Though AB 1594 contained a severability clause, *see* 2022 Cal. Stat. ch. 98 § 4, it did not contain a saving clause intended to preserve the entire bill as written in pending litigation, *see generally id*.

[7] Additionally, the Attorney General sponsored AB 1263, *see Senate Judiciary Hearing on AB 1263*, 2025-2026 Regular Session 1 (Ca. 2025) (executive summary), and has no incentive to enforce an earlier version of a statute that he himself supported amending. Further, an existing preliminary injunction from the Central District of California would likely prevent the Attorney General from enforcing the pre-AB 1263 version of section 3273.51(c) if the underlying conduct concerned marketing firearm-related products to minors. *See* Order Entering Preliminary Injunction, *Junior Sports Magazine, Inc. v. Bonta*, 2:22-cv-04663 (C.D. Cal. Oct. 1, 2025).

[8] Though the Supreme Court's decision in *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988), which disfavors retroactivity, is in apparent tension with *Bradley*, the Ninth Circuit favors the approach in *Bradley* and the presumption of retroactivity, *see, e.g.*, *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1306-07 (N.D. Cal. 1992) (listing cases).

retroactive application, and those of "great national concerns" in which "the court must decide according to existing laws." *Id.* at 712. This case includes the Attorney General of the nation's largest state and a national trade association and concerns an issue of significant public safety. It is as far from a "mere private case[] between individuals" as possible. The second prong of the *Bradley* "manifest injustice" test asks whether retroactive application of the law would "infringe upon or deprive a person of a right that had matured or become unconditional." *Id.* at 720. The last factor concerns whether "new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Id.* Both factors favor retroactivity because AB 1263 *narrows* the scope of the challenged subsection. Therefore, AB 1263 neither deprives NSSF or its members of rights nor does it impose new obligations upon them. The only harm AB 1263 does to NSSF is to its case for justiciability, which is no "manifest injustice."

## II. AB 1263 DOES NOT AFFECT THE MERITS OF NSSF'S COMMERCE CLAUSE CLAIM, WHICH REMAINS DEFICIENT

AB 1263 does not bear directly on the analysis of whether section 3273.51(c) violates the Commerce Clause. The bill removed the presumption that firearm-related products are abnormally dangerous if they are designed, sold, or marketed in a manner that is targeted to minors without regard to in- or out-of-state applications. Accordingly, NSSF's claims fail for the same reasons outlined in the Attorney General's Cross-Motion for Summary Judgment. *See* Dkt. 75-1 at 9-22.

## CONCLUSION

As before, the Attorney General is entitled to summary judgment on NSSF's pre-enforcement facial challenge to section 3273.51(c). Though NSSF's claim was not justiciable from the start, AB 1263 has confirmed that NSSF's claim is moot and that its claim is not ripe.

| | |
|---|---|
| Dated: February 2, 2026 | Respectfully submitted,<br><br>ROB BONTA<br>Attorney General of California<br>ANNA FERRARI<br>Supervising Deputy Attorney General<br>S. CLINTON WOODS<br>Deputy Attorney General<br><br><br>*/s/ Ryan D. Eason*<br>RYAN D. EASON<br>Deputy Attorney General<br>*Attorneys for Defendant*<br>*Attorney General Rob Bonta* |

SA2023302822
68208156.docx

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | *National Shooting Sports Foundation v. Rob Bonta* | Case No. | **3:23-cv-00945-AGS-KSC** |

I hereby certify that on <u>February 2, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>February 2, 2026</u>, at San Francisco, California.

| M. Mendiola | *M. Mendiola* |
|---|---|
| Declarant | Signature |

SA2023302822