UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, | Case No.:  23-cv-0945-AGS-KSC |
| Plaintiff, | **SUMMARY-JUDGMENT ORDER (ECF 74 & 75)** |
| v. | |
| Rob BONTA, Attorney General of California, | |
| Defendant. | |

A California statute forbids gunmakers *everywhere* from, among other things, producing various firearms deemed "abnormally dangerous" that are reasonably expected to find their way into California-based hands. This Court previously ruled that this provision is likely unconstitutional. That is, the law seems to defy the dormant Commerce Clause, which bars a state from directly regulating commercial transactions that take place entirely beyond its borders.

These constitutional concerns persist, but this lawsuit cannot. Earlier this year, California repealed its ban on the one category of "abnormally dangerous" firearms that plaintiff had standing to attack. "Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot." *FBI v. Fikre*, 601 U.S. 234, 240 (2024).

## BACKGROUND

In 2023, California enacted the Firearm Industry Responsibility Act, which includes restrictions on certain gun types. *See* Cal. Civ. Code § 3273.50 (2023), *et seq*.; *id.* § 3273.51(c) (banned gun categories); *see also* Appendix below (setting out in full the 2023 version of § 3273.51). Generally, industry members may not "manufacture, market, import," or sell any "firearm-related product that is abnormally dangerous and likely to create an unreasonable risk of harm . . . in California," Cal. Civ. Code § 3273.51(c) (2023),

1

when it is at least "reasonably foreseeable that the item would be possessed in California," *id*. § 3273.50(d)(3). The Firearm Act blacklisted several specific categories of weapons by presumptively defining them as "abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety." *Id*. § 3273.51(c)(2). Critically, that list included guns that are "designed, sold, or marketed in a manner that is targeted at minors[.]" *Id*. § 3273.51(c)(2)(C).

Before the Firearm Act took effect, plaintiff National Shooting Sports Foundation—a trade group of gun manufacturers, sellers, and industry participants—brought this action to declare the statute unconstitutional and to block California's Attorney General (the defendant) from enforcing it. This Court ruled that plaintiff lacked standing to contest much of the regulatory scheme. *National Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1258 (S.D. Cal. 2024). But the Court reasoned that the Foundation had standing to challenge the ban on guns "targeted at minors" because its members "make and sell" "youth-model firearms," which are "targeted at juveniles." *Id*. at 1251. Thus, the Court granted plaintiff's motion to preliminarily enjoin the statutory section that contained that provision. *Id*. at 1258 (enjoining Cal. Civ. Code § 3273.51(c) (2023)).

As of 2026, however, the legislature repealed the ban on youth-targeted firearms, striking the word "minors" from the law's text. *Compare* Cal. Civ. Code § 3273.51(c)(1)(C) (2023) ("targeted at *minors or other* individuals who are legally prohibited from accessing firearms" (emphasis added)) *with id*. § 3273.51(c)(1)(C) (2026) ("targeted at individuals who are legally prohibited from accessing firearms"). At the Court's request, the parties updated their summary-judgment briefing to address this legislative development, "with particular attention to the issue of standing." (*See* ECF 79.)

**DISCUSSION**

Federal courts are constitutionally confined to deciding only "Cases" or "Controversies." U.S. Const. art. III, § 2. Put simply, federal judges may not rule on hypothetical disputes. What's more, "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*,

23-cv-0945-AGS-KSC

568 U.S. 85, 90–91 (2013) (cleaned up). "No principle is more fundamental to the judiciary's proper role in our system of government" than this jurisdictional limitation. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 397 (2024).

As relevant here, two doctrines flesh out aspects of this bedrock case-or-controversy prerequisite: standing and mootness. The State relies on both in urging the Court to toss this lawsuit for lack of jurisdiction.

## A.    Standing

### 1.  Governing Law

In federal court, plaintiffs must establish their "standing to sue," meaning that they have "a personal stake in the dispute and are not mere bystanders." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025) (quotation marks omitted). In lay terms, they must answer the question: "What's it to you?" *Id*. Standing is assessed based on "the facts as they existed at the time the complaint was filed." *Natural Resources Defense Council v. EPA*, 38 F.4th 34, 56 (9th Cir. 2022) (cleaned up).

In this case, the Foundation must satisfy the more onerous burden of invoking organizational standing to litigate on its constituents' behalf. *See Bonta*, 718 F. Supp. 3d at 1250–52 (analyzing such standing in this case); *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (discussing "representational or organizational standing"). Such associational standing has several preconditions, but only one is in any doubt: The Foundation must demonstrate that "at least one of its members has suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, rather than conjectural or hypothetical." *See California Restaurant Assn. v. City of Berkeley*, 89 F.4th 1094, 1099 (9th Cir. 2024). Plaintiff never identified any actual injury, "such as ceasing business, discarding inventory, or altering operations." *Bonta*, 718 F. Supp. 3d at 1251. So, this Court focuses instead on whether "such harm is fast approaching." *Id*.

"When challenging a law prior to its enforcement," as here, an organizational plaintiff satisfies the "imminent" "injury-in-fact requirement" if one of its members:

3

(1) intends "to engage in a course of conduct arguably affected with a constitutional interest," (2) "proscribed by a statute," and (3) "there exists a credible threat of prosecution thereunder." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). The last of these so-called *Driehaus* elements—the "credible threat of prosecution"—is in turn evaluated based on three factors: (a) whether the member has "articulated a concrete plan to violate the law in question," (b) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (c) "the history of past prosecution or enforcement under the challenged statute." *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022).

### 2. The Foundation's Standing to Challenge the Firearm Act

Because plaintiffs must have standing for "each claim" and "each form of relief," *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008), the Court and parties previously analyzed the Foundation's standing to contest three Firearm Act sections: (1) the "reasonable controls" proviso, Cal. Civ. Code § 3273.51(b) (2023); (2) the part on "abnormally dangerous" firearms, *id.* § 3273.51(c); and (3) the portion related to certain unlawful business practices, *id*. § 3273.51(d). The Court ruled that the Foundation had standing to challenge the section on "abnormally dangerous" guns, but not the others. *Bonta*, 718 F. Supp. 3d at 1252–54.

Subsequent legislative events now demand a more nuanced treatment of that section's distinct provisions. In broad strokes, that section sets forth (1) a general ban on "abnormally dangerous" firearms, Cal. Civ. Code § 3273.51(c) (2023), as well as presumptive bans on specific gun types: (2) those "most suitable for assaultive purposes," *id*. § 3273.51(c)(2)(A); (3) those that are "designed, sold, or marketed in a manner that foreseeably promotes conversion" from legal into illegal firearms, *id*. § 3273.51(c)(2)(B); (4) those that are "designed, sold, or marketed in a manner that is targeted at minors," *id*. § 3273.51(c)(2)(C); and (5) those "targeted at . . . other individuals who are legally prohibited from accessing firearms," *id*. Regardless of such distinctions, the case would

have proceeded past the initial standing inquiry. But the Court must now consider each discrete provision separately for a complete justiciability determination.

### (a) *Ban on Guns "Targeted at Minors"*

When the amended complaint was filed, plaintiff had a concrete stake in challenging the 2023 Firearm Act's presumptive ban on firearms "designed" or "sold" "in a manner that is targeted at minors." *See* Cal. Civ. Code §§ 3273.51(c), (c)(2), (c)(2)(C) (2023). The Court's prior standing ruling relied exclusively on this provision. *See Bonta*, 718 F. Supp. 3d at 1249–52. The Court incorporates its earlier reasoning, *see id.*, but revisits that analysis to underscore how close the question was and is.

For the minor-targeted gun regulation, the only serious standing argument is over the final *Driehaus* hurdle—"credible threat of prosecution"—which is assessed with the three familiar factors: "concrete plan," "warning or threat," and "history of past prosecution." *See Unified Data*, 39 F.4th at 1210. First, organizational plaintiffs are "deemed" to have a "concrete plan" to break a law if their "members are maintaining policies that are presently in conflict with" the disputed regulation. *California Trucking Assn. v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021). And at least one Foundation member continued to make weapons "obviously" "targeted at minors": "youth-model firearms," which have a "smaller size and lighter weight" than standard models. (ECF 14-2, at 4 (cleaned up).)

Although these facts suggest a "concrete plan," it's a closer call than might seem at first blush. Under the 2023 law, firearm-industry members were only prohibited from making and selling a minor-targeted gun if it was "likely to create an unreasonable risk of harm . . . *in California*," Cal. Civ. Code § 3273.51(c) (emphasis added), and at least "reasonably foreseeable" that it "would be possessed *in California*," *id.* § 3273.50(d)(3) (emphasis added). The California-nexus evidence is sparse. There is nothing in the record about whether Foundation members made or sold any youth-model firearms in California or even *near* California. Plaintiff offered declarations from two of its out-of-state members. In one, Smith & Wesson Inc.'s representative maintained that the company "manufactures"

"youth-model firearms" that are "obviously 'designed . . . in a manner that is targeted at minors.'" (ECF 14-2, at 4.) Yet Smith & Wesson is a "Delaware corporation with its principal place of business in Massachusetts"; its production facilities are in "Massachusetts and Connecticut," with no "manufacturing operations in California"; and it "does not sell directly to any civilian in California." (*Id*. at 2.) The other declaration was even less helpful to plaintiff's cause. (*See* ECF 14-1, at 2 (company has no "manufacturing operations in California"); *id*. at 4 (its firearms are, at most, "conceivably" "suitable" for "minors").)

How do these scant facts suggest a concrete plan to make or sell guns that will "be possessed in" and will lead to an "unreasonable risk of harm" in *California*? They don't. But a few things push plaintiff's showing over the line. One: Under the old statute, any youth-targeted firearms were, by *definition*, "likely to create an unreasonable risk of harm to public health and safety." Cal. Civ. Code §§ 3273.51(c)(2), (c)(2)(C). Two: Smith & Wesson conceded that its weapons are intended "for civilian use in every state in the country," which would include California, and that its third-party distributors "sell the products throughout the United States." (ECF 14-2, at 2.) Three: Smith & Wesson is among "the country's most popular firearms manufacturers" (ECF 77-1, at 2), making it more predictable that its youth-model guns would wend their way to California. Thus, Smith & Wesson had intent, knowledge, and reasonable expectations regarding California gun distributions. This "demonstrated that [its] policies [were] in conflict" with the 2023 statute, which establishes a "concrete plan" to disobey it. *See California Trucking*, 996 F.3d at 653.

Turning to the second "credible threat" consideration—"whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings"—there was no such ultimatum. *See Bonta*, 718 F. Supp. 3d at 1251–52. But "the Ninth Circuit takes a 'broad view of this factor' and does not require 'an explicit warning.'" *Id*. at 1252 (quoting *Isaacson v. Mayes*, 84 F.4th 1089, 1100 (9th Cir. 2023)). Two circumstances sufficiently indicate the threat was credible: (1) the Firearm Act's multipronged litigation

right, including a "private right of action," which deputized every gun-violence victim in California as a potential litigant, and (2) "the State's refusal to disavow enforcement during this litigation." *Id*. (cleaned up) (quoting first *Isaacson*, 84 F.4th at 1101, and then *California Trucking*, 996 F.3d at 653).

The third and final factor unequivocally cuts against a "credible threat" finding, as there was no "history of past prosecution or enforcement under the challenged statute." *See Unified Data*, 39 F.4th at 1210. But the 2023 law was "new" then, so "the history of past enforcement carries little, if any[,] weight." *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022). Due to the first two factors, the Foundation showed a credible threat of prosecution. So, it had standing at this suit's outset—and upon filing the amended complaint—to litigate the ban on firearms targeted at minors.

**(b)** *Other Gun Bans*

As to the non-youth-related gun restrictions, however, the Foundation has not successfully answered the most basic standing question: "What's it to you?" *See Diamond Alternative*, 606 U.S. at 110. In fact, the record reveals only one *specific* gun type that plaintiff's members make or distribute: "youth-model firearms."[1] (ECF 14-2, at 4; ECF 77-1, at 3.) There is no record evidence of any other banned weapons. Indeed, the Foundation declarants maintained that they were "unable to determine what makes a particular firearm 'abnormally dangerous' or 'most suitable for assaultive purposes,' or . . .

---

[1] This Court's prior hypothetical about "AR-style long guns" is not evidence that any Foundation member makes such a weapon. *See Bonta*, 718 F. Supp. 3d at 1255; (*see also* ECF 85, at 3 (plaintiff highlighting this Court statement).) Nor are counsel's assertions in briefs that members "sell AR-style rifles out of state." (ECF 29, at 7; ECF 85, at 6.) Any jurisdictional fact must "affirmatively appear in the record"; it "may not be gleaned from the [attorneys'] briefs and arguments themselves." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 547 (1986). Finally, plaintiff's newly submitted declaration—after the stipulated record was finalized—adds no facts that would change the analysis. (*See* ECF 74-2.) The State's objection (ECF 75-1, at 13 n.2) to that new evidence is overruled as moot.

7

'designed, sold, or marketed in a manner that foreseeably promotes conversion of legal firearm-related products into illegal firearm-related products.'" (ECF 14-1, at 3; ECF 14-2, at 3); *see also* Cal. Civ. Code §§ 3273.51(c), (c)(2)(A)–(B) (2023). They also don't admit to any involvement with guns "targeted at . . . individuals who are legally prohibited from accessing firearms." *See* Cal. Civ. Code § 3273.51(c)(2)(C). To the contrary, the evidence suggests that plaintiff's members and their distributors studiously observe all "applicable laws." (*See* ECF 14-2, at 2–4; ECF 74-2, at 4; *see also* ECF 14-1, at 2–4; ECF 77-1, at 4.) Even as to the sole gun type properly before the Court, the declaration underscored that "minors in California are *permitted* to use the youth-model firearms that Smith & Wesson manufactures." (ECF 14-2, at 4 (emphasis added); *see also* ECF 14-1, at 4 (noting that some firearms could "conceivably" be "suitable" for "minors who are *permitted to use firearms lawfully*" (emphasis added).)

The Foundation protests that the litigants *agreed* plaintiff's members deal in these banned weapons. That is, the parties stipulated: "Many [Foundation] members manufacture, distribute, import, market, or sell products that fall within the scope of §3273.51(c), including 'youth-model firearms' that are 'smaller size and lighter weight' than standard models." (ECF 77-1, at 3.) Plaintiff claims that the reference to "youth-model firearms" was merely "illustrative," so the stipulation "confirms" that its members are "engaged in a variety of conduct" that these bans arguably cover. (ECF 85, at 6–7.)

Yet litigants could agree that a pillow qualifies as an "abnormally dangerous" firearm, but a judge need not concur. While "the government is bound by the *facts* to which it stipulated," this Court's "ultimate decision concerning the *legal effect* of those admitted facts is not and could not be controlled by the parties' stipulation." *Lorentsen v. Hood*, 223 F.3d 950, 954–55 (9th Cir. 2000); *see also Sanford's Estate v. Commissioner*, 308 U.S. 39, 51 (1939) ("We are not bound to accept, as controlling, stipulations as to questions of law."). The parties stipulated to the *fact* of "youth-model firearms"-dealing, which the Court relied on in its standing analysis. But whether any other (unnamed) guns "fall within the scope of §3273.51(c)" is a *legal* question, which the Court must decide independently.

23-cv-0945-AGS-KSC

Given this barren record, plaintiff falters on two of the three *Driehaus* requirements: "proscribed by a statute" and "credible threat of prosecution." The Foundation's members have not pointed to any of their specific firearms that may fall within the scope of the non-juvenile-related provisions. So, their planned "course of conduct"—making weapons that are *not* abnormally dangerous, *not* targeted at felons, *not* designed for illegal conversion, and so on—is not "proscribed by [this] statute." *See Driehaus*, 573 U.S. at 159. For similar reasons, the "credible threat" element is lacking. Since the members don't deal with those banned weapons, they have no "concrete plan" to flout the relevant regulations. In this context, it is harder to ignore the lack of an explicit "warning or threat" and the absence of any "history of past prosecution."

In sum, the Foundation has no concrete stake in litigating the various non-youth-related gun bans. And it never did. It thus lacks standing to do so.

## B. Mootness

Because the Foundation has standing to challenge only the 2023 ban on youth-targeted guns, our inquiry narrows to a single question: Is that still a live controversy? No. The legislature repealed that provision.

The mootness doctrine "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (cleaned up). While plaintiffs must establish standing, "the party asserting mootness" typically shoulders the "heavy burden" of showing that the dispute is now purely academic. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). Yet courts "presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc). As the party opposing this "presumption of mootness," the Foundation has the burden of demonstrating "a reasonable expectation of reenactment," which "must be founded in the record," not "on speculation alone." *Id.*

There is no evidence here that the minor-related gun restriction—or anything like it—will be reenacted. So, that legal controversy is moot. As the Foundation has no other surviving legal claims, this case must be dismissed.

## CONCLUSION

Because a change in law renders the only remaining legal controversy moot, the Court lacks jurisdiction to hear it. The Court need not reach the parties' other arguments. Accordingly:

1. This case is **DISMISSED** without prejudice.

2. The Foundation's summary-judgment motion (ECF 74) is **DENIED** as moot.

3. The Attorney General's summary-judgment motion (ECF 75) is **GRANTED** as to justiciability, to the extent discussed above. That motion is otherwise **DENIED** as moot.

4. The preliminary injunction (ECF 48) is lifted.

5. The Clerk will enter judgment and close this case.

Dated: March 31, 2026

_____
Hon. Andrew G. Schopler
United States District Judge

23-cv-0945-AGS-KSC

**APPENDIX**

**California Civil Code § 3273.51**

**Firearm industry standard of conduct; compliance; violations**

(Effective: July 1, 2023, to December 31, 2025)

(a) A firearm industry member shall comply with the firearm industry standard of conduct. It shall be a violation of the firearm industry standard of conduct for a firearm industry member to fail to comply with any requirement of this section.

(b) A firearm industry member shall do both of the following:

(1) Establish, implement, and enforce reasonable controls.

(2) Take reasonable precautions to ensure that the firearm industry member does not sell, distribute, or provide a firearm-related product to a downstream distributor or retailer of firearm-related products who fails to establish, implement, and enforce reasonable controls.

(c) A firearm industry member shall not manufacture, market, import, offer for wholesale sale, or offer for retail sale a firearm-related product that is abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety in California. For the purposes of this subdivision, the following shall apply:

(1) A firearm-related product shall not be considered abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety based on a firearm's inherent capacity to cause injury or lethal harm.

(2) There shall be a presumption that a firearm-related product is abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety if any of the following is true:

(A) The firearm-related product's features render the product most suitable for assaultive purposes instead of lawful self-defense, hunting, or other legitimate sport and recreational activities.

(B) The firearm-related product is designed, sold, or marketed in a manner that foreseeably promotes conversion of legal firearm-related products into illegal firearm-related products.

11

23-cv-0945-AGS-KSC

(C) The firearm-related product is designed, sold, or marketed in a manner that is targeted at minors or other individuals who are legally prohibited from accessing firearms.

(d) A firearm industry member shall not engage in any conduct related to the sale or marketing of firearm-related products that is in violation of the following sections:

(1) Paragraph (1), (2), (3), (4), (5), (6), (7), (8), or (9) of subdivision (a) of Section 1770.

(2) Section 17200 of the Business and Professions Code.

(3) Section 17500 of the Business and Professions Code.

(4) Section 17508 of the Business and Professions Code.

23-cv-0945-AGS-KSC